UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CAMPBELL HARRISON & DAGLEY L.L.P. and CALLOWAY, NORRIS, BURDETTE & WEBER, PLLC, Petitioners/Plaintiffs, | § § § § | |
| v. | § § | |
| LISA BLUE/BARON AND BLUE, CHARLA G. ALDOUS d/b/a ALDOUS LAW FIRM, and the LAW OFFICES OF STEPHEN F. MALOUF, P.C., Intervenor/Plaintiffs, | § § § § § § § | CIVIL ACTION NO. 3:10-CV-02269-O |
| v. | § § | |
| ALBERT G. HILL, III, and ERIN HILL, individually and on behalf of her minor children, N. HILL, C. HILL, and A. HILL, Defendants. | § § § § § § § | |

## MEMORANDUM OPINION AND ORDER

This matter is principally an attorneys' fees dispute on final appeal from Magistrate Judge Renée Harris Toliver's evidentiary and legal findings. Following entry of a final judgment on November 8, 2010 in *Albert G. Hill, III v. Tom Hunt, et al.*, Cause No. 3:07-CV-2020-O (hereinafter, the "Underlying Litigation"), the Court severed a dispute concerning attorneys' fees that had arisen between Lisa Blue/Baron and Blue, Charla G. Aldous d/b/a Aldous Law Firm, The Law Offices of Stephen F. Malouf, P.C., and Stephen F. Malouf on the one side (collectively, "BAM") and Albert G. Hill, III, Erin Nance Hill and their minor children on the other side (collectively, "Hill III"),

1

related to work performed by BAM on behalf of Hill III between November 2009 and July 2010 in the Underlying Litigation.[1]  BAM then filed an Amended Complaint in Intervention against Hill III [doc. 58], alleging breach of contract, anticipatory breach of contract and *quantum meruit*.  These allegations arose from Hill III's having challenged the validity of, and amount owed under, a contingency fee agreement entered into by BAM and Hill III ("BAM Fee Agreement"), the express terms of which provided a 30% fee on Hill III's "gross affirmative recovery" from the settlement of the Underlying Litigation. On March 29, 2011, Hill III filed his First Amended Counter-Complaint against BAM, as well as a cross-complaint against Malouf individually, alleging breach of fiduciary duty, professional negligence, duress, breach of oral contract and fraud.  [doc. 203].  BAM subsequently filed a motion for summary judgment as to Hill III's counterclaims.  [doc. 309].

On January 12, 2011, waiving their right to arbitration, BAM and Hill III entered into an agreement by which: (i) "[t]he right to recover and the amount of, if any, attorneys' fees and expenses owed by Hill to BAM shall be determined by an evidentiary hearing before [United Stated Magistrate] Judge Toliver"; and (ii) "Judge Toliver's ruling on the fee dispute can be appealed only to Judge O'Connor and none of the Parties will request an evidentiary hearing before Judge O'Connor related to such appeal." [doc. 52-1, Agreement ¶¶ 1, 14].  On January 18, 2011, the Court issued an order approving the parties' agreement, and referred the fee dispute to Magistrate Judge Toliver with instructions to hold an evidentiary hearing and to "make proposed findings of fact and recommendations for the disposition of [BAM's] complaint in intervention and any amendment

---

[1]The Court's decision assumes the parties' familiarity with the facts and procedural history in the Underlying Litigation, from which this attorneys' fee dispute has been severed.  On May 13, 2010, following a mediated settlement conference before Magistrate Judge Paul D. Stickney, Hill III and each of the BAM attorneys executed a "Global Settlement and Mutual Release Agreement" (hereinafter, the "Global Settlement") in the Underlying Litigation. Case No. 3-07-cv-2020-O [doc. 879].  Final Judgment was entered on November 8, 2010 [doc. #999], and is now on appeal to the United States Court of Appeals for the Fifth Circuit [doc. 1121].

thereto." [doc. 56, Order Approving Agreement].  On April 4, 2011, the Court issued an order approving the parties' "Agreement Relating to Albert G. Hill, III's Counterclaims and Third-Party Claims and Defenses and Counterclaims Thereto," under which the parties agreed that the counterclaim dispute shall be decided by an evidentiary hearing before Magistrate Judge Toliver commencing on June 27, 2011, and that the Court's prior referral order [doc. 56] encompassed the counterclaim dispute. [doc. 210, Order Approving Agreement Regarding Counterclaims].

Following a multi-day evidentiary hearing on the fee dispute that commenced April 20, 2011, Magistrate Judge Toliver entered her Findings of Fact and Conclusions of Law (the "Findings") on June 15, 2011, setting out in a detailed and comprehensive 38-page opinion her reasons for finding that: the BAM fee agreement was valid and binding on Hill III; Hill III breached the BAM Fee Agreement; the December 8, 2010 present fair market value of Hill III's gross affirmative recovery obtained by BAM in settlement of the Underlying Litigation totaled $114,745,870.00, of which BAM was entitled to a 30% contingency fee of $34,423,761.00, as well as an award of prejudgment interest at the rate of $4,715.58 per day, and postjudgment interest calculated at the federal rate; Hill III was entitled to an award of reasonable attorneys' fees and costs for expenses he incurred from July 20, 2010 (the date BAM withdrew from representing Hill III in this matter) through final judgment in each of the cases from which BAM also withdrew from representation; and Hill III was entitled to "30 days from the date of a final order in this matter" to elect to either (a) pay all of Hill III's attorneys' fees currently by paying BAM 30% of the present fair market value of Hill III's "gross affirmative recovery," or (b) pay BAM 30% of amounts that Hill III receives under the settlement as he receives them. [doc. 319, Findings at 35-37].

3

Magistrate Judge Toliver subsequently entered an order granting in part and denying in part the parties' motions to clarify and correct the Findings, wherein she: modified her calculation of the present fair market value of Hill III's "gross affirmative recovery" in the settlement of the Underlying Litigation to $112,357,744.00, of which BAM was entitled to a 30% contingency fee of $33,707,323.00; found that BAM was entitled to recover from Hill III reasonable costs and fees incurred by BAM's counsel in connection with the fee dispute in the amount of $3,022,246.49; and found that Hill III was entitled to an offset of $691,175.93 against the fees and costs that he owed BAM, representing the attorneys' fees and costs for the expenses Hill III incurred from July 20, 2010 through final judgment in each of the cases from which BAM withdrew from representation. [doc. 357, August 11, 2011 Order at 19-20].

On June 20, 2011, Magistrate Judge Toliver entered a separate order granting BAM's motion for summary judgment as to Hill III's counterclaims for breach of fiduciary duty, duress, breach of oral contract and fraud, and denying BAM's motion as to Hill III's counterclaim for professional negligence. [doc. 322, Summary Judgment Order]. Magistrate Judge Tolliver reasoned that, with the exception of Hill III's professional negligence counterclaims, all remaining counterclaims were legally barred based on her prior rulings on the same issues in BAM's favor and against Hill III in her Findings of Fact and Conclusions of Law. [doc. 322, Summary Judgment Order at 7-8]. On June 23, 2011, upon Hill III's motion, Magistrate Judge Toliver dismissed with prejudice Hill III's professional negligence counterclaim. [doc. 329].

4

With regard to Magistrate Judge Toliver's Findings,[2] Hill III has objected on four principal grounds and BAM has objected on one ground. Hill III has also objected to Magistrate Judge Toliver's Summary Judgment Order. Following a *de novo* review, and for the reasons set forth fully below, the Court: sustains in part and overrules in part Hill III's objections to the Findings; overrules BAM's objections to the Findings; and overrules Hill III's objections to Magistrate Judge Toliver's Summary Judgment Order. Based on these rulings, the Court finds that BAM is entitled to an attorneys' fee award in the amount of $21,942,961.

# I.

### *Objections to Magistrate Judge Toliver's Findings*

Both parties have filed objections to Magistrate Judge Toliver's Findings. [doc. 365, Hill III Obj. to Findings; doc. 363, BAM Conditional Objection to Findings]. The Court first addresses Hill III's four principal objections, followed by BAM's conditional objection.

# A.

### *Hill III's Objections to Findings*

Hill III objects to Magistrate Judge Toliver's Findings on four principal grounds. First, Hill III objects to Magistrate Judge Toliver's finding that the BAM Fee Agreement is valid and enforceable, arguing that the Court should reject this finding because the BAM Fee Agreement: (i) violated Texas Disciplinary Rule of Conduct 1.04; and (ii) was executed long after BAM began representing Hill III, and BAM could not show that the agreement was fair. Second, Hill III objects to Magistrate Judge Toliver's finding that BAM's withdrawal as Hill III's counsel did not waive

---

[2]The Court's reference to "Findings" henceforth encompasses both Magistrate Judge Toliver's June 15, 2011 Findings of Fact and Conclusions of Law [doc. 319], as well as her August 11, 2011 Order modifying her Findings of Fact and Conclusions of Law [doc. 357].

5

BAM's right to a contingency fee.  Relatedly, Hill III objects to Magistrate Judge Toliver's failure to reduce BAM's contingency fee award in light of BAM's alleged breaches of fiduciary duty. Third, Hill III objects to Magistrate Judge Toliver's calculation of BAM's damages, contending she erred in: (i) failing to calculate Hill III's recovery net of amounts that Hill III is required to pay other parties under the Global Settlement in the Underlying Litigation; and (ii) awarding BAM a 30% contingency fee on amounts to be paid to Hill III's minor children or, alternatively, incorrectly calculating the fair market value of this these amounts.  Fourth, Hill III objects to Magistrate Judge Toliver's award of attorney's fees and expenses to BAM that Hill III contends are non-recoverable. The Court addresses each objection in turn.

### 1.

The parties dispute whether the BAM Fee Agreement is valid and enforceable.  Magistrate Judge Toliver found that it was, and Hill III objects to her finding, arguing that the BAM Fee Agreement: (i) violated Texas Disciplinary Rule of Conduct 1.04; and (ii) was executed long after BAM began representing Hill III, creating a presumption of unfairness which BAM has not overcome.  [doc. 365, Hill III Obj. to Findings at 8-15].  While disagreeing with Magistrate Judge Toliver's findings in part, the Court nevertheless agrees with her overall finding that the BAM Fee Agreement is valid and enforceable, and therefore **overrules** Hill III's first objection.

### a.     *Texas Disciplinary Rules of Professional Conduct, Rules 1.04(f) and (g)*

Texas Disciplinary Rule of Professional Conduct Rule 1.04(f) provides that if attorneys from more than one law firm join together to share a fee or to jointly represent a client, the attorney must obtain from the client informed consent in writing to the terms of the arrangement prior to the time of the association or referral proposed, including:

6

(i) the identity of all lawyers or law firms who will participate in the fee-sharing agreement, and

(ii) whether fees will be divided based on the proportion of services performed or by lawyers agreeing to assume joint responsibility for the representation, and

(iii) the share of the fee that each lawyer or law firm will receive or, if the division is based on the proportion of services performed, the basis on which the division will be made[.]

Tex. Disc. Rules of Prof. Conduct R. 1.04(f).  Failure to follow the rules may result in a *quantum meruit* fee recovery.  Tex. Disc. Rules of Prof. Conduct R. 1.04(g).  "Although the Disciplinary Rules do not define standards of civil liability for attorneys, they are persuasive authority outside the context of disciplinary proceedings, and we have applied Rule 1.04 as a rule of decision in disputes concerning attorney's fees."  *Hoover Slovacek LLP v. Walton*, 206 S.W.3d 557, 561 n. 6 (Tex. 2006)(citations omitted); *Sanes v. Clark*, 25 S.W.3d 800, 805 (Tex. App. – Waco 2000, pet. denied)(holding that contingency fee contracts are voidable where attorneys fail to comply with Disciplinary Rules); *but see* Tex. Disc. Rules of Prof. Conduct Preamble ¶ 15 (providing that "[t]hese rules do not undertake to define standards of civil liability of lawyers for professional conduct";  "the purpose of these rules can be abused when they are invoked by opposing parties as procedural weapons"; and "[t]he fact that a rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the rule.")

While recognizing that the BAM Fee Agreement was not executed by Hill III until January 14, 2010, well after Malouf's representation began on December 22, 2009, Magistrate Judge Toliver nevertheless found that the BAM Fee Agreement did not violate Texas Disciplinary Rule of Professional Conduct 1.04(f):

Prior to Malouf's agreement with Blue and Aldous by December 24, 2009, to work together on the case, and based on the fact that the terms were identical to those in the First Fee Agreement, the Court finds that Hill III consented in writing to (1) the identity of the lawyers who would participate in the fee-sharing agreement, (2) the fees being divided by lawyers agreeing to assume joint responsibility for the representation, and (3) the share of the fee that each lawyer or law firm would receive.  Hill III's consent was memorialized by an exchange of emails that adequately complied with Texas Disciplinary Rule of Professional Conduct 1.04(f).

[doc. 319, Findings at 10-11].

Alternatively, Magistrate Judge Toliver concluded that even were there a "minor violation" of Rule 1.04:

[T]hese rules do not define standards for civil liability.  Thus, although courts often use the rules as a measure of public policy, they are not required to do so, and the Court will not do so in this case given Hill III's clear intent to enter into the BAM Fee Agreement as of December 22, 2009, and his level of sophistication as a consumer of legal services.

[doc. 319, Findings at 11, internal citations omitted].

Having conducted a *de novo* review, including weighing and evaluating the trial testimony and evaluating the email correspondence cited by Magistrate Judge Toliver as evidence of compliance with Rule 1.04, the Court rejects Magistrate Judge Toliver's finding that Rule 1.04 was satisfied in this instance.  Simply stated, as Hill III correctly notes, there are no documents in the record dated on or before December 22, 2010 (the undisputed date on which Malouf entered into a contingent fee sharing agreement with Blue and Aldous and began holding himself out as Hill III's attorney)[3] that evidence Hill III's written consent to a fee sharing agreement among the three BAM firms.

---

[3]*See* Appendix to Hill III Obj. ("Hill App."), Ex. B (ECF 259 at 21:1-22:2); Hill App., Ex. L at 196-97 (DX 144); Supp. App. to Hill III Obj. ("Supp. App."), Ex. D (ECF 259 at 78:6-8).

By definition, email correspondence between Hill III and the BAM attorneys between December 23 and December 29, does not constitute the manner or degree of "written consent" required by Rule 1.04(f) (stating that client must "consent[] in writing to the terms of the [fee sharing] agreement **prior to** the time of the association . . . .") (emphasis added).  The only email prior to December 22, 2009 is a December 21, 2009 email from Hill III to Aldous stating that he and his wife "want to sleep on" Malouf's participation, and asking whether the financial terms would remain the same if Malouf were retained.  Hill App., Ex. M at 377 (PX2).  Aldous then responded, "I think it will be the same deal."  Hill App., Ex. M at 378-79 (PX3).  The following evening, on December 22, 2009, Malouf sent an email to opposing counsel stating: "I represent Al Hill, III and Erin Hill."  Hill App., Ex. L at 196-97 (DX 144).  Malouf testified at trial that at the time of the December 22, 2009 email, he already represented Hill III and had entered into a fee sharing agreement with Blue and Aldous.  Hill App., Ex. B (ECF 259 at 21:1-22:2; 23:17-25).  After Malouf's December 22, 2009 email, Hill III sent Malouf an email stating "Great email" and attached an email he had sent to Mark Lanier earlier that same evening explaining to Lanier that he "should have the needed details" on December 23 regarding who his new attorney would be.  Hill App., Ex. M at 380-81 (PX 4).  On December 23, 2009,  Jonathan Nockels, one of Malouf's associates, delivered to Hill III a draft Contingent Fee Contract and Power of Attorney.  (PX6).  On December 24, 2009, Nockels circulated a copy of the Lanier Fee Agreement to compare against a draft Contingent Fee Contract and Power of Attorney he had already circulated on December 23.  Hill App., Ex. M at 400-01 (PX7).  Blue sent an email response stating "I agree to sign this."  (*Id.*)  Aldous sent an email response stating "Me too."  (*Id.*)  Hill III responded by email: "We just need a current case list to attach."  (*Id.*)  On December 26, 2009, Lanier responded to Hill III's December

9

22, 2009 email regarding an orderly transition of the file and informed Hill III that "[w]e will do all we can to smooth the transition." (PX9). Hill forwarded Lanier's email to Malouf later that same day. (PX9). On December 28, 2009, Aldous signed the agreement and her staff sent it by email to the other BAM attorneys and the Hills. (PX10). Between January 2 and January 13, 2010, BAM and the Hills exchanged numerous emails regarding whether the Hills had signed the BAM Fee Agreement, and certain emails expressed frustration that Hill III had yet to sign. (DX 184, DX 186, DX 187, DX 196, DX 198, DX204, DX 215). On January 14, 2010, Hill III signed the BAM Fee Agreement, though he testified that he only signed it because BAM told him that if he did not sign it, he would be forced into bankruptcy. Hill III App., Ex. H (ECF 265 at 49:10-50:21). Hill III also testified that he did not sign the BAM Fee Agreement sooner because he "wasn't sure if [he] wanted Steve Malouf to represent [him] or not." Hill III App., Ex. H (ECF 265 at 48:14-18).

The parties' experts provided conflicting testimony regarding whether the BAM Fee Agreement satisfied Rule 1.04(g). Hill III's legal ethics and professional responsibility expert, Professor Jeffrey Hazard, testified that the emails, including the December 24, 2009 email from Hill III stating that "[w]e just need a current case list to attach[,]" contrary to BAM's arguments, did not constitute consent under Rule 1.04 as of December 24, 2009, let alone as of December 22, the date on which Malouf began representing Hill III and entered into a fee sharing agreement with Blue and Aldous. Hill III App., Ex. J (ECF 267 at 146:24-148:5). By contrast, BAM's expert, Professor Vincent Johnson, testified that the exchange of emails between Hill III and BAM "fully complies

with the disclosure and written consent provisions of 1.04." ECF 267, Trial Transcript Vol. 5B (07-27-11) at 58:21-59:4.[4]

Considering the evidence in its totality, the Court finds that BAM did not fulfill the requirements of Rule 1.04(f). There is no evidence that Hill III "consent[ed] in writing to the terms of the [fee sharing] agreement **prior to** the time of the association . . . ." Rule 1.04(f) (emphasis added). The requirements of Rule 1.04(f) are clear and precise, and are designed, in large measure, to prevent the type of post-representation disputes that have arisen in this matter. *See, e.g., Hoover*, 206 S.W.3d at 561 n.6 (and cases cited therein). At most, the email exchanges evidence an intent to execute, but do not, in and of themselves, constitute a formal written execution of, and consent to, the contingency fee agreement. The Court's finding, however, does not necessarily answer the question of the consequences of BAM's failure to satisfy Rule 1.04(f).

Although the Court has found BAM did not comply with the Rule 1.04(f) in documenting its contingent fee arrangement, rendering the fee agreement voidable, the Court nevertheless finds that on the record before it, application of Rule 1.04(g) to disallow BAM's recovery for anything more than *quantum meruit* recovery is unwarranted. Instead, the Court agrees with Magistrate Judge Toliver's alternative finding:

> [A]lthough courts often use the [disciplinary] rules as a measure of public policy, they are not required to do so, and the Court will not do so in this case given Hill III's clear intent to enter into the BAM Fee Agreement as of December 22, 2009, and his level of sophistication as a consumer of legal services.

---

[4]Unlike Hill III's briefing, BAM's response to Hill III's objections and appeal does not contain a separate appendix, and therefore the citations pertaining to evidence cited by BAM in its response are directly to the trial record, rather than to an appendix.

11

[doc. 319, Findings at 11, and citations therein].[5]  The emails between Hill III and the BAM attorneys between December 21 and December 29, 2009, as well as Hill III's and Malouf's testimony, while insufficient under Rule 1.04(f), demonstrate that Hill III entered into an attorney-client relationship with Malouf under the same terms as those in the Lanier Fee Agreement.  (*see* PX6, PX7, PX10).  Hill III testified that by December 22, 2009, he understood that Malouf was his lawyer, "stepping into Lanier's position in the case," and that he commenced an attorney-client relationship with Malouf the first day they met because he disclosed a lot of confidential information to him.  [doc. 260 at 52-53; doc. 265 at 45-46].  Further, between December 22, 2009, and the time Malouf filed a Notice of Appearance in the case on December 28, 2009 (PX 11), Hill III sent hundreds of emails to Malouf (with attachment pages exceeding 3000), and Malouf's work on behalf of Hill III was well underway.  (PX 12, a box of emails with attachments).

Simply stated, while BAM failed to comply with Rule 1.04(g), under the unique circumstances presented, Hill III fails to mount a credible case that the BAM Fee Agreement violated public policy such as to render it unenforceable.  The Court now turns to the legal issues resulting from the BAM Fee Agreement's late execution.

      b.      *Timing of BAM Fee Agreement and the Presumption of Unfairness*

---

[5]The Court rejects Hill III's argument that Magistrate Judge erred when she took into account Hill III's level of sophistication.  *Cf.* Tex. Disc. Rules of Prof. Conduct R. 1.06, cmt. 8 (distinguishing between disclosures of conflicts sufficient for "sophisticated clients" versus "less sophisticated clients").  By all accounts, including his own, Hill III was a "sophisticated client."  *See* doc. 260 at 57 (Hill III stating that he was a sophisticated enough consumer of legal services to represent himself in discussions with BAM about the BAM Fee Agreement); doc. 264 at 55-56 (Kim Davis's testimony describing Hill III as a "very smart man"); doc. 265 (Alan Struble's testimony describing Hill III as smart and sophisticated).  Further, while the Court recognizes that Hill III at one point testified that he "wasn't sure if [he] wanted Steve Malouf to represent [him] or not" (Hill III App., Ex. H (ECF 265 at 48:14-18)), the Court finds this testimony lacks credibility given the overwhelming weight of the evidence to the contrary, as set forth above.

When a contingency fee agreement is entered into during the existence of the attorney-client relationship, there is a presumption of unfairness or validity attaching to such contracts. *See Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co.*, 20 S.W.3d 692, 699 (Tex. 2000) (citing *Archer v. Griffith*, 390 S.W.2d 735, 739 (Tex. 1964)) ("Contracts between attorneys and their clients negotiated during the existence of the attorney-client relationship are closely scrutinized."); *id.* ("[b]ecause the relationship is fiduciary in nature, there is a presumption of unfairness or invalidity attaching to such contracts."); Restatement (Third) of the Law Governing Lawyers § 18 comment c (2000) ("[C]lient-lawyer fee contracts entered into after the matter in question is under way are subject to special scrutiny.")

In this case, because Hill III did not sign the BAM Fee Agreement until January 14, 2010, more than three weeks after Malouf undertook representation of Hill III (and approximately two months after Blue and Aldous began representing him), a presumption of unfairness applies, regardless of whether the Lanier Fee Agreement was still in effect (as Magistrate Judge Toliver found in reasoning that no presumption of unfairness applies in this case), or whether, as the great weight of the evidence suggests to the contrary, the Lanier Fee Agreement was void following Mark Lanier's withdrawal (as Hill III argued).[6] *See Keck*, 20 S.W.3d at 699; *Archer*, 390 S.W.2d at 739.

---

[6]The evidence shows that Mark Lanier, shortly after informing Hill III that a conflict had arisen, told Hill III's counsel that the Lanier Fee Agreement was "void."  Hill III App., Ex. H (ECF 265 at 43:18-45:16).  Email correspondence between Blue and Aldous also confirms that Lanier told Hill III that the Lanier Fee Agreement was "terminated" because of the Lanier Law Firm's withdrawal, and Aldous emailed Blue: "Since Lanier said the contract was terminated when they refused to sign the waiver they could argue we have no fee agreement."  Hill III App., Ex. L at 203-04 (DX 186).  Further, numerous emails from Blue and Aldous to Hill III prior to January 14, 2010, urging Hill III to sign the BAM Fee Agreement, and expressing frustration by his lack of compliance, suggest that Blue and Aldous understood the Lanier Fee Agreement to be void.  Hill III App., Ex. L at 202-205-212-219 (DX 184; DX 186; DX 187; DX 196; DX 198; DX204; DX215); Hill III App., Ex. M at 612 (PX240).

13

Accordingly, the Court **sustains** Hill III's objection to Magistrate Judge Toliver's decision not to apply the presumption of unfairness.

The evidence before the Court suggests that BAM has overcome the presumption of unfairness. *See Archer*, 390 S.W.2d at 739 ("The burden of establishing [an agreement's] perfect fairness, adequacy, and equity, is thrown upon the attorney[.]").  Evidence presented by Hill III shows that before Hill III signed the BAM Fee Agreement on January 14, 2010, circumstances had evolved such that BAM knew it was likely that Hill III would in short order obtain a large recovery in the Underlying Litigation.  In December 2009, BAM took what it describes as an "outcome determinative" deposition of Ivan Irwin after which, according to BAM, the validity of Hill Jr.'s disclaimers could no longer be disputed.  Hill III App., Ex. E (ECF 262 at 130:12-14); Hill III App., Ex. M at 540-42 (PX62); Hill III App., Ex. L at 206-11 (DX 188).  Following the Irwin deposition, Malouf told the Underlying Defendants they should now "stipulate to the effectiveness of [Hill Jr.'s] disclaimers" because the validity of the disclaimer could not be meaningfully disputed.  Hill III App., Ex. M at 540-42 (PX62).

On the other hand, the Court recognizes the substantial work performed by BAM on behalf of Hill III, and the not insignificant results achieved.[7]   Further, the cases cited by Hill III are distinguishable.  In *Falk & Fish LLP v. Pinkston's Lawnmower & Equip., Inc.*, 317 S.W.3d 523, 528 (Tex. App. – Dallas 2010, no pet.), upon which Hill III relies, the lawyer's representation of the

---

[7]According to BAM, each of the BAM attorneys individually worked in excess of 1900 hours on the Hill's litigations between November 2009 and July 2010, and combined with other counsel "dedicated an aggregate of approximately 20,500 hours" to Hill's litigation matters during this time period.  [doc. 370, BAM Resp. to Hill III Obj. at 2].  Hill contends that "BAM's assertions concerning the amount of time the lead BAM attorneys worked are false[.]" [doc. 376, Hill III Reply at 9].  Were the Court to order a *quantum meruit* fee recovery, this dispute would have significance, but at this juncture the Court is able to conclude that BAM did substantial work without nitpicking about minor discrepancies.

14

client commenced six months before the lawyer ever drafted an agreement. By contrast, Hill III signed the agreement approximately three weeks after Malouf began representation. Further, in *Falk* and in *Keck*, the complaints raised by the clients related to terms of the agreement that had been negotiated after representation had begun. In this case, the BAM Fee Agreement is virtually identical to the Lanier Fee Agreement, the terms of which Hill III knew well before Malouf's representation began on December 22, 2009.

In sum, following its *de novo* review, the Court finds that BAM has rebutted the presumption of unfairness. Hill III's objections are **overruled**.

     c.     *Duress*

Hill III also objects to Magistrate Judge Toliver's finding that Hill III's testimony – that he only signed the BAM Fee Agreement because he was under duress – lacked credibility. Following a *de novo* review, in light of conflicting testimony by Hill III (*compare* doc. 260 at 52-53 *with* doc. 256 at 49-50), the Court agrees with Magistrate Judge Toliver's finding that Hill III's testimony that he signed the BAM Fee Agreement under duress is not credible. As stated in Magistrate Judge Toliver's Findings:

> Hill III testified he freely entered into the BAM Fee Agreement, he wanted BAM to be his lawyers as of the date he signed the Fee Agreement, Malouf was not forced on him, and he voluntarily agreed to retain Malouf. Hill III also testified, however, that he signed the BAM Fee Agreement under duress because BAM refused to put up the $300,000 necessary to obtain a new trial in state court unless he signed the agreement and told Hill III that he would be forced into bankruptcy if he did not sign it. The Court, however, does not find Hill III's testimony about duress credible in light of these conflicts in his testimony. In any event, BAM was well within its rights to require Hill III to sign a fee agreement obligating him to repay the $300,000 before advancing the money required to secure a new trial in the state court proceeding.

[doc. 319, Findings at 10].  Following a *de novo* review, the Court similarly concludes that, given the conflicts in testimony highlighted by Magistrate Judge Toliver, Hill III's testimony that he signed the BAM Fee Agreement under duress lacks sufficient credibility.  Accordingly, the Court **overrules** Hill III's objection to Magistrate Judge Toliver's finding that his testimony pertaining to duress lacked credibility.

**2.**

Matters deteriorated in the summer of 2010 when a settlement of the Underlying Litigation triggered issues on the interpretation of BAM's fee recovery under the agreement.  This ultimately led to BAM filing an emergency motion to withdraw as Hill III's counsel.  The parties contest the significance of BAM's withdrawal.  Hill III contends that BAM's withdrawal requires the forfeiture of BAM's fees under the terms of the Fee Agreement, or, alternatively, that BAM's various alleged breaches of fiduciary duty merit fee forfeiture or fee adjustment.  These alleged breaches are: (i) BAM's communication with the Guardian Ad Litem regarding its fee award; (ii) BAM's attempt to secure a release from prospective liability; (iii) BAM's attempt to add favorable language to the Global Settlement; (iv) BAM's threats to the Hills; and (v) BAM's failure to fulfill promises to Hill III regarding suing other entities in the Underlying Litigation.  [doc. 365, Hill III Obj. to Findings at 15-24; doc. 376, Hill III Reply at 9-15].

    a.    *Applicable Law - Breach of Fiduciary Duty*

Under Texas law, where an attorney commits a "clear and serious violation" of his fiduciary duties to a client, a court can reduce or eliminate the attorney's fee.  *Burrow v. Acre*, 997 S.W.2d 229, 240-41 (Tex. 1999).  A violation is clear if a reasonable lawyer would have known the conduct was wrongful.  *Id.* at 241.  Breach of fiduciary duty by an attorney usually involves an attorney's

16

failure to disclose conflicts of interest, failure to deliver funds belonging to the client, placing his or her personal interests over the client's interests, improperly using the client's confidences, taking advantage of the client's trust, engaging in self-dealing, and making misrepresentations. *Goffney v. Rabson*, 56 S.W.3d 186, 193 (Tex. App. – Hous. [14th Dist.] 2001, pet. denied). Some of the factors courts consider in determining whether a violation of a lawyer's duties to his client is clear and serious are: (1) the gravity and timing of the violation, (2) its willfulness, (3) its effect on the value of the lawyer's work for the client, (4) any other threatened or actual harm to the client, and (5) the adequacy of other remedies. Further, the court should give great weight to the public interest in maintaining the integrity of the attorney-client relationship. *Goffney*, 56 S.W.3d at 243. Breaches of fiduciary duty can justify fee forfeiture even if the client does not sustain damage from the lawyer's disloyalty. *Id.* at 239-40.

b.      *BAM's Communications with the GAL and BAM's Subsequent Withdrawal*

At the evidentiary hearing, the parties extensively litigated whether BAM voluntarily withdrew from representing Hill III, whether Hill III constructively discharged BAM with good cause, or whether Hill III constructively discharged BAM without cause. The distinction is significant since the BAM Fee Agreement provides that: "in the event of voluntary withdrawal by all attorneys, all attorneys' fees herein shall be waived." (DX221 at 5). Further, under Texas law, "whether and how to compensate an attorney when a contingent fee contract is prematurely terminated depends on whether the attorney was discharged, withdrew with the consent of the client, or withdrew voluntarily without consent." *Augustson v. Linea Aerea Nacional-Chile S.A. (LAN-Chile)*, 76 F.3d 658, 662 (5th Cir. 1996). Where a client discharges an attorney without cause, the attorney can recover either on a contingent fee contract or in *quantum meruit. Id.*; *see, e.g., Mandell*

17

*and Wright v. Thomas*, 441 S.W.2d 841, 847 (Tex. 1969). An attorney discharged for cause can only recover in *quantum meruit*. *Id.* Where an attorney, without just cause, abandons his client, he forfeits all right to compensation. *Id.* (citation omitted).

Magistrate Judge Toliver found that BAM's "withdrawal under the particular circumstances of this case did not result in a waiver of the right to a contingency fee under the BAM Fee Agreement." [doc. 319, Findings at 14]. First, she found that BAM's withdrawal was not "voluntary" within the meaning of the Fee Agreement and that BAM did not "utterly abandon" Hill III. [*Id.*]. Further, although recognizing that "BAM came close to overstepping the bounds of appropriateness in its discussions with the GAL over its fees," she concluded that "the Court cannot find, looking at the quality of BAM's representation as a whole, that BAM's conduct constituted good cause for discharge." [doc. 319, Findings at 14].

Hill III objects to this finding. Following a *de novo* review, the Court **overrules** Hill III's objections.

<em>i.</em>    <em>Relevant Background Facts</em>

An understanding of the events leading up to the Final Judgment is necessary to place Hill III's objections in context. In mid-May 2010, BAM began to draft a provision for proposed inclusion in the already-finalized Global Settlement that would have enabled BAM to collect attorneys' fees on one of the financial components of the Global Settlement, namely, the MHTE portion of the settlement related to Albert G. Hill, IIII and Erin Nance Hill's three minor children. (DX 499; DX 517). On May 14, 2010, the Undersigned appointed Michael Hurst as Guardian Ad Litem ("GAL") to review the Global Settlement on behalf of the Hills' three minor children. Case No. 3-07-cv-2020-O [doc. 880]. The record shows that BAM thereafter communicated, generally on an *ex parte*

18

basis, with the GAL regarding the settlement assets that it believed were properly subject to BAM's 30% attorneys' fee award, ultimately urging the GAL to recommend to the Court that BAM be paid $50 million in attorneys' fees.  (DX 587, DX 590, DX 598, DX 605, DX 626).

On July 7, 2010, the GAL recommended a $30 million fee (including expenses) for BAM. Case No. 3-07-cv-2020-O [doc. 899 at 17].  On July 20, 2011, Hill III objected to the GAL's report, contending that the BAM Fee Agreement was invalid, the fee was unconscionable, and BAM had breached its fiduciary duties, rendering its attorneys' fees subject to forfeiture. Case No. 3-07-cv-2020-O [doc. 907 at 2].   Magistrate Judge Stickney rejected the GAL's recommended fee for unrelated reasons. Case No. 3-07-cv-2020-O [doc. 917 at 3].  Following Hill III's objection, BAM filed an emergency motion to withdraw as Hill III's counsel on July 21, 2010, which was later granted, effective July 20, 2010.  Case No. 3-07-cv-2020-O [doc. 913].

*ii.     Magistrate Judge Toliver's Findings*

At the evidentiary hearing before Magistrate Judge Toliver, Hill III argued that BAM waived its right to a contingency fee by withdrawing as Hill III's counsel in July 2010, nearly four months before the settlement was approved in the Underlying Litigation by way of the Court's Final Judgment.  Hill III also argued that BAM's fee award (if not forfeited altogether), should be reduced based on BAM's alleged breaches of fiduciary duty.

With regard to Hill III's argument that BAM's withdrawal as Hill III's counsel in July 2010 resulted in a waiver of BAM's right to a contingent fee, Magistrate Judge Toliver found:

> BAM's withdrawal under the particular circumstances of this case did not result in a waiver of the right to a contingency fee award under the BAM Fee Agreement. First, the Court does not believe that BAM's withdrawal was "voluntary" within the meaning of the Fee Agreement, and BAM did not utterly abandon Hill III [. . .] Indeed, as late as July 7, 2010, BAM wanted to remain on the case.  (DX677;

19

DX697).  While it is a close call, the Court does not find that BAM's engaging in fee negotiations with the GAL constituted good cause for Hill III's discharge of BAM [. . .].  BAM came close to overstepping the bounds of appropriateness in its discussion with the GAL over its fees, and it is not surprising that Hill III was uncomfortable enough with these discussions, once he learned the extent of them, to want to discharge BAM.  However, the Court cannot find, looking at the quality of BAM's representation as a whole, that BAM's conduct constituted good cause for discharge.  Moreover, once Hill III filed his objection to the GAL fee recommendation, BAM, which had wisely been getting advice from outside ethics counsel, had no choice but to move to withdraw from further fee representation of Hill III.

[doc. 319, Findings at 14-15, emphasis added].

Having conducted a *de novo* review, for the reasons stated directly below, the Court agrees with Magistrate Judge Toliver's findings and **overrules** Hill III's objections.

### iii.    Hill III's Objections to BAM's Communications with the GAL

The Court has examined BAM's communications with the GAL (DX587, DX588, DX589. DX595, DX697, DX706), as well as Hill III's communications with BAM regarding said communications (DX706), and agrees with Magistrate Judge Toliver that BAM's communications with the GAL regarding an appropriate fee award, though troubling, were not "particularly nefarious" and "Hill III does not cite any law to support his argument that the communications were inappropriate."  [doc. 319, Findings at 13].  Further, absent from the record is evidence to support Hill III's argument that BAM's communications with the GAL (either before or after Hill III stated his objection) rise to the level of a breach of fiduciary duty or harmed Hill III in any way. Accordingly, Hill III's objection is **overruled**.

### iv.    Constructive Discharge of BAM

To reiterate, Magistrate Judge Toliver found that "[w]hile it is a  close call, the Court does not find that BAM's engaging in fee negotiations with the GAL constituted good cause for Hill III's

discharge of BAM [. ]" [doc. 319, Findings at 14-15, emphasis added]. Following a *de novo* review, the Court **overrules** Hill III's objections and agrees with Magistrate Judge Toliver. The cases relied upon by Hill III are not on point, as they involve situations where a client has good cause to terminate an attorney based on that attorneys' breach of fiduciary duty. *See Whiteside v. Hartung*, 1999 WL 548211, at *6 (Tex. App. – Houston [14th Dist.] July 29, 1999, unpub., pet. denied) (under contingency fee agreement, client has good cause to discharge attorney where attorney breaches his fiduciary duty to client); *Rocha v. Ahmad*, 676 S.W.2d 149, 153 (Tex. App. – San Antonio 1984, writ dism'd) (under contingency fee agreement, client has good cause to discharge attorney where "attorney fails to perform his duties in the manner that an attorney of ordinary skill and ability would have performed his duties "). The Court has already found (*see supra*, sec. I.A.1.b.iii) that BAM's communications with the GAL regarding its fee award do not rise to the level of a clear and serious breach of fiduciary duty.

    *c.*    *The Release*

Another source of dispute is a release from prospective liability contained in the Global Settlement. The release provides, in relevant part:

> As of the Effective Date, each Plaintiff . . . on behalf of himself or herself . . . hereby RELEASES, ACQUITS, AND FOREVER DISCHARGES each Defendant (including each trust for their benefit and their trustees) and each other Plaintiff (including each trust for their benefit and their trustees) and each Additional Party and each Plaintiff, Defendant, and Additional Party's agents, assigns, representatives, employees, present and former attorneys (except Bill Brewer, Bickel & Brewer, and Campbell Harrison & Dagley, L.L.P. and any of their agents, assigns, representatives, employees, partners, and present and former attorneys) . . . from any and all past, present or future claims, actions, causes of action, counts, counter-claims, cross-claims, and appeals whatsoever . . .

Case. No. 3-07-cv-2020-O [doc. 879 at 9].  Hill III took the position before Magistrate Judge Toliver that BAM's attempt to obtain a release from him waiving any claims against BAM as part of the Global Settlement is a breach of fiduciary duty.  BAM argued that the release was valid and enforceable with regard to Hill III's counterclaims.

Under Texas law, disciplinary rules forbid an attorney from making an agreement with his client to prospectively limit the attorney's malpractice liability unless (1) the agreement is permitted by law, and (2) the client is independently represented in making the agreement."  Tex. Disc. R. of Prof. Cond. R. 1.08(g); *Keck*, 20 S.W.3d at 699.  Further, the attorney has the burden, as fiduciary, to establish that his client is fully informed of all the material facts relating to the release because such releases are presumptively unfair and invalid.  *Keck*, 20 S.W.3d at 699.

While Magistrate Judge Toliver found that the release was unenforceable due to "insufficient evidence that Hill III was fully informed of all material fact relating to the release" [doc. 319, Findings at 17], she rejected Hill III's argument that "BAM's attempt to secure a release from Hill III was a violation of BAM's fiduciary duty." [*Id.* at 18].  Instead, she found: "In this case, the Court does not find that BAM's attempt to secure a release from Hill III was a violation of BAM's fiduciary duty.  While BAM's disclosure was inadequate to fully inform Hill III of all material facts such as to render the release unenforceable, BAM did fully disclose to [Alan] Struble BAM's intent to obtain a release from liability." [*Id.* at 18].  Hill III objects to this finding.

A *de novo* review of the evidence shows that Hill III's separate attorneys, Kim Davis and Alan Struble, testified they were unaware that BAM was seeking a release from Hill III.  Hill III App, Ex. H (ECF 265 at 130:18-23); Hill III App., Ex. J (ECF 267 at 172:20-173:2).  The only evidence to support BAM's claim that Hill III's separate attorneys were told in person about the release is

uncorroborated testimony from one of Malouf's colleagues who testified that he told Hill III about the contents of the release (and this testimony is refuted by Hill III); and an email relied upon by Magistrate Judge Toliver as evidence of adequate disclosure of the release to Hill III and his separate counsel. The email from BAM to Hill III and his separate tax attorney Kim Davis (which Hill III then forwarded to Struble) states that "all of Plaintiffs' counsel" would be receiving a release. Hill III App., Ex. M at 552-97 (PX 127). The Court has reviewed this email and, while recognizing that the parties' experts disagreed whether this email was sufficient to show that Hill III was independently represented by counsel in making the agreement (Hill III App., Ex. J (ECF 267 at 134:6 - 137:24; 138:20 - 139:3)), the Court finds the email sufficient to disclose to Hill III's independent counsel that a release in favor of BAM would be given by Hill III.[8] Accordingly, while the release is unenforceable with regard to Hill III's counterclaims due to insufficient evidence that Hill III was fully informed of all material facts relating to the release, the Court finds that BAM's attempt to secure a release from Hill III was not a breach of its fiduciary duty, and **overrules** Hill III's objections to the contrary.

### 3.

Next, Hill III objects to Magistrate Judge Toliver's calculation of BAM's damages. Hill III contends that Magistrate Judge Toliver's erred in: (i) failing to calculate Hill III's recovery net of

---

[8]With regard to Hill III's remaining objections concerning Magistrate Judge Toliver's findings that BAM did not breach its fiduciary duty, the Court **overrules** the objections. First, the Court agrees with Magistrate Judge Toliver that BAM's attempt to add language to the Global Settlement to clarify that it was entitled to recover fees on the MHTE portion of the settlement did not constitute a breach of fiduciary duty, when balanced against BAM's right to protect any recovery under the contingent fee agreement. [*see* doc. 319, Findings at 19-20]. Further, a review of BAM's various threats to Hill III, including threatening to quit working for him if he did not take various settlement offers, viewed in the context of the totality of the record, and taking into account Hill III's actions, do not rise to the level of taking advantage of a client's trust or engaging in self-dealing such as to support a finding of breach of fiduciary duty. [*Id.* at 20-22]. Further, for the reasons stated by Magistrate Judge Toliver in her Findings, the Court agrees that BAM did not breach its fiduciary duty by not fulfilling an alleged promise to the Hills to sue additional entities in the Underlying Litigation. [*Id.* at 22-24].

amounts that Hill III is required to pay other parties under the Global Settlement in the Underlying

Litigation; and (ii) awarding BAM a 30% contingency fee on amounts to be paid to Hill III's minor

children.  For the reasons that follow, the Court sustains Hill III's objections.

   a. *Amounts Hill III is Required to Pay other Parties under the Global Settlement*

   The BAM Fee Agreement provides that BAM shall receive 30% of Hill III's "gross

affirmative recovery," which is defined as "anything of value or benefit secured or made part of, or

subject to, any recovery, judgment, award, order, or settlement."  Hill III App., Ex. L at 228 (DX 221

at 2 (Sec. 2.02)).  Under the Global Settlement, the Underlying Defendants agreed to pay certain

amounts to Hill III, and Hill III agreed to pay over $7.5 million to the Underlying Defendants and

their affiliates.  Hill III App., Ex. Q at 19 (3:07-cv-2020-O doc. 879).  Magistrate Judge Toliver

found that BAM's contingent fee should be calculated based on the amount of the payment to Hill

III, not including any offset for the more than $7.5 million Hill III was required to pay his opponents.

[doc. 319 Findings at 26].  Hill III objects.

   In considering the BAM Fee Agreement, the Court finds that an ambiguity exists regarding

whether BAM's fee should be calculated net of amounts that Hill III is required to pay others under

the Global Settlement (Hill III's interpretation), or whether BAM's fee should be calculated solely

on the amount of payments to Hill in the Global Settlement, not including any offsets (BAM's

interpretation).  Specifically, the Court finds persuasive Professor Hazard's opinion in his April 1,

2011 Rebuttal Report that there is ambiguity in the term "gross affirmative recovery" internal to the

BAM Fee Agreement, which sometimes uses the term "affirmative recovery"(indicating that

contingent fees should be calculated net of amounts client is required to pay others), and at other

times uses the term "gross affirmative recovery" (indicating that fees should be calculated without

the offset). (DX873). Further, as noted by Professor Hazard, Malouf himself acknowledged that the term "gross affirmative recovery" is unusual and was not a term he used in other client fee agreements." (DX873). Given the ambiguity, the Court interprets the fee agreement against BAM, the attorney, and finds that BAM's fee should be calculated net of amounts that Hill III is required to pay others under the Global Settlement. *See Levine v. Bayne, Snell & Krause, Ltd.*, 40 S.W.3d 92, 95-96 (Tex. 2001) (imposing obligation on clarifying attorney-client contract upon attorney because of attorney's greater knowledge and experience with respect to fee arrangement and because of trust client places in attorney). Further, this finding is in keeping with the Restatement (Third) of Law Governing Lawyers § 35 (1998) ("when a lawyer has contracted for a contingency fee, the lawyer is entitled to receive the specified fee only when and to the extent the client receives payment.") (*cited in Levine*, 40 S.W.3d at 94); *see also Levine*, 40 S.W.3d at 95-96 (contingent fee based on "any amount received" must be calculated only on client's net recovery). Accordingly, the Court **sustains** Hill III's objection and finds that the amount of BAM's fee should be reduced to reflect the more than $7.5 million that Hill III is required to pay his opponents as part of the Global Settlement.

       *b.*      *Amounts Being Put into Trust for Hill III's Minor Children*

          *i.*      *The $30.675 Million Earmarked for the Children's Trusts*

Under the terms of the BAM Fee Agreement, the Court agrees with Magistrate Judge Toliver's finding that BAM's fee is due on the $30.675 million which the Final Judgment earmarks for the children's trusts, and overrules Hill III's objection to the contrary.[9] As correctly found by

---

[9]The Final Judgment calls for Hill III's father, Albert G. Hill, Jr., to pay $30.675 million over a period of five years to Hill III, who is then obligated to put all that money in trusts for his three children. Hill III App., Ex. L at 355-58 (DX386 at ¶¶ 21-22).

Magistrate Judge Toliver, under the plain language of the Final Judgment, money used to fund the children's trusts was paid "in settlement of disputed claims" and "for Al III's benefit." [doc. 319, Findings at 31-32].

Nevertheless, the Court recognizes its discretion to adjust (or even eliminate) any contingency fee recovery based on moneys to be paid to Hill III to establish the trusts for Hill III's minor children, and finds that, on the record presented, a 30% contingency fee award is not in the minors' interests. *See, e.g., Hoffert v. General Motors Corp.*, 656 F.2d 161, 164-66 (5th Cir. 1981) (affirming district court's decision to reduce firm's contingency fee from one-third to one-fifth in litigation involving automobile collision involving minor, and recognizing district court's "broad authority to inquire into the whole range of issues bearing upon [the minor plaintiff's] recovery in order to guarantee that the settlement agreement was in accord with [minor's] interests."); *Cappel v. Adams*, 434 F.2d 1278, 1280-81 (5th Cir. 1970) (affirming district court's decision to limit contingency fee recovery from one-third (as per the parties' contract) to one-fifth in case involving injury to minor). The Court notes evidence in the record that at one point in its negotiations, BAM appeared to agree that this money should not be treated as a recovery by Hill III and would be subject to a separate negotiation between Hill III and BAM, but later changed its mind and sought the full 30% fee on these monies. Hill III App., Ex. H (ECF 265 at 64:5-65:2, 123:4-24); Hill III App., Ex. I (ECF 266 at 163:10-25); Case No. 3-07-cv-2020-O [ECF 910-1 at 6]. Based on the record, the Court finds that a 10% contingency fee recovery on the amounts to be paid to Hill III to establish trusts for Hill III's minor children is equitable.

ii.    *The $10.5 Million Earmarked for Gift Taxes*

26

The Court **sustains** Hill III's objection to Magistrate Judge Toliver inclusion of the $10.5 million which the Final Judgment earmarks for estimated gift taxes due by Hill III on the amounts funded for the children's trusts.  The record shows that because it was anticipated that the structure of the deal would cause Hill III to incur a substantial gift tax on the $30.675 million  earmarked for the children's trusts, opposing parties agreed to pay $10.5 million to Hill III from the HHTE specifically to defer pay off these gift taxes.  Simply put, this amount of money was included in the settlement specifically to offset Hill III's tax liability.  Thus, to characterize this amount as money being paid "in settlement of a disputed claim" and "for Al III's benefit" is to elevate form over substance, which the Court will not do.

c.    *Calculating Fair Market Value of Trust Interests*

Having considered the conflicting testimony of the parties' experts, the Court **sustains** Hill III's objection to the Magistrate Judge Toliver's calculation of the fair market value of the children's trusts.  As Hill III's expert Kinrich testified, the fair market value of an interest in the trust is what a willing buyer would pay to acquire the interest, not the value of the assets the trusts hold or are funded with.  Hill III App., Ex. K (ECF 268 at 67:3-21).  The Court finds persuasive the expert testimony of Kinrich that a willing buyer would pay $12.4 million to acquire the children's interests as beneficiaries of the newly created trusts.  Hill III App., Ex. K (ECF 268 at 90:17-24).  Unlike Kinrich, BAM's expert, Burkman, simply calculated the net present value of the future cash payments by Hill Jr. to Hill III, which method the Court rejects in favor of Kinrich's method.  In short, the Court finds that, as per the fair market value analysis presented by Hill III's expert, *see* Hill Supp. App. Ex. L (ECF 268 at 90:17-91:2), $12.4 million is the fair market value of the money that will be paid into the trusts for Hill III's minor children.

27

**4.**

The parties also dispute whether BAM is entitled to its attorneys' fees and expenses as the prevailing party in defending against Hill III's counterclaims in this severed action. Hill III objects to Magistrate Judge Toliver's finding that BAM is entitled to recover attorneys' fees and costs in the amount of $3,022,246.49. In her August 11, 2011 Order, Magistrate Judge Toliver found that:

> BAM is the prevailing party and is, thus, entitled to an award of reasonable attorney fees and costs. In a pretrial stipulation, the parties agreed that BAM could submit, by affidavit, evidence in support of an award of attorney's fees and expenses in the event of a recovery by BAM. (Doc. 240). Accordingly, BAM's counsel, Alan Loewinsohn, has provided a declaration in support of his request for attorney's fees and costs incurred in litigating BAM's claim.

[doc. 357, August 11, 2011 Order at 16-17]. Based on the Declaration and Supplemental Declaration of Alan Loewinsohn, Magistrate Judge Toliver found that BAM was entitled to $3,022,246.49 in attorneys' fees and costs incurred in defending against Hill III's counterclaims. [*Id.* at 18].

In Hill III's objections, Hill III first contends that "BAM is not entitled to fees for the defense of Hill III's counterclaims, and particularly not as to his malpractice claim." [doc. 365, Hill III Obj. to Findings at 29]. Hill III argues, alternatively, that BAM was required to segregate any such fees because BAM is not entitled to recover amounts incurred in defending against Hill III's professional negligence claim. Second, Hill III contends that BAM is not entitled to an award of more than $1.2 million in expenses, based on "conclusory statements in a declaration, unsupported by any backup documentation or other evidence." [doc. 376, Hill III Reply at 18]. BAM contends it is entitled to fees and costs it incurred in defending against Hill III's counterclaims because the defense was necessary to recover in full under the BAM Fee Agreement; that segregation of fees is not required because the underlying facts are so similar; and the parties stipulated that costs and fees could be

28

proved by way of affidavit with no supporting documentation. [doc. 370, BAM Resp. to Hill III Obj. at 34-39].  The Court addresses these objections in turn.

Under Texas law, a prevailing party may only recover attorneys' fees if authorized by statute or by the parties' contract.  *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310 (Tex. 2006). BAM's request for attorneys' fees is based on Texas Civil Practice and Remedies Code section 38.001(8), which permits recovery of "reasonable attorneys' fees" to the prevailing party on a claim for breach of contract.  Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (Vernon 1997).  Section 38.001 does not provide for attorney's fees in the pure defense of a claim.  However, if the plaintiff's breach of contract claim and the defendant's counterclaims arise from the same transaction, and the same facts required to prosecute the claim are required to defend against the counterclaim, then attorney's fees may be appropriate.  *De La Rosa v. Kaples,* 812 S.W.2d 432, 434 (Tex.App.-San Antonio 1991, writ denied); *see generally 7979 Airport Garage, L.L.C. v. Dollar Rent A Car Sys., Inc.*, 245 S.W.3d 488, 507 (Tex. App. – Houston [14th Dist.] 2007, pet. denied) ("[W]hen a defendant asserts a counterclaim that the plaintiff must overcome in order to fully recover on its contract claim, the attorney's fees necessary to defeat that counterclaim are likewise recoverable.").

In this case, the Court finds, as did Magistrate Judge Toliver in her August 11, 2011 Order [doc. 357 at 18], that BAM's breach of contract claim and Hill III's counterclaims for breach of fiduciary duty, duress, breach of contract and fraud arose from the same transaction, and the same facts required to prosecute BAM's breach of contract claim were also required to defend against the counterclaims.  The Court further finds, however, that the facts giving rise to Hill III's counterclaim for professional negligence are different from the facts relating to the parties' dispute regarding the fee agreement.  Hill III's counterclaim for professional negligence alleges: (a) BAM did not

29

diligently pursue Hill III's claims against Exxon/Mobil, XTO, Goldman Sachs and KPMG; (b) did not diligently pursue Hill III's damages against the Underlying Defendants; (c) presented legally damaging arguments to state court, which the Underlying Defendants used to reduce their settlement offer in the Underlying Litigation; (d) failed to adequately represent Hill III's interest in the Underlying Litigation; and (e) did not adequately assess the merits of the claims brought against Hill III by the law firms of Campbell, Harrison & Dagley and Calloway, Norris, Burdette & Walker for Hill III's failure to pay their fees, resulting in those firms threatening to file an arbitration demand against Hill III. [doc. 203, First Am. Counter-Compl.]. In short, for BAM to prosecute its breach of contract claim, it was not required to defend against the allegations in the professional negligence counterclaim. Based on these findings, the Court concludes BAM is entitled to attorney's fees incurred in defending the counterclaims (other than professional negligence), and **overrules** Hill III's objection to the contrary.

With regard to segregating attorney's fees and costs, however, the Court **sustains** Hill III's objection. In *Chapa*, the Texas Supreme Court held that a prevailing party must segregate recoverable from unrecoverable attorney's fees. 212 S.W.3d at 313. The Court agrees with Hill III that "as a matter of law, BAM is not entitled to recover attorney's fees or costs for any work pertaining solely to defense of Hill III's malpractice claim that was severed from BAM's fee claims. This is especially true here because the facts giving rise to Hill III's malpractice claim were different than the facts relating to the parties' contract dispute." [doc. 365, Hill III Obj. to Findings at 30]. *Varner v. Cardenas*, 218 S.W.3d 68, 69 (Tex. 2007), cited by Magistrate Judge Toliver (and BAM) is not to the contrary. In *Varner*, the Texas Supreme Court held that plaintiffs did not need to segregate attorney's fees and expenses they incurred in defending against a counterclaim and

Case 3:10-cv-02269-O   Document 379   Filed 12/31/11   Page 31 of 40   PageID 12372

affirmative defense since, to collect on the full amount of their suit, the plaintiffs had to overcome

the defendant's defense and, because "their attorney's efforts to that effect were necessary to recover

on their contract, they are recoverable." In this instance, unlike in *Varner*, the allegations pertaining

to Hill III's professional negligence counterclaim are different from the allegations at issue in the fee

dispute, and it cannot be said that BAM needed to defend against or defeat Hill III's professional

negligence counterclaim in order to recover on the BAM Fee Agreement. Cases cited by BAM are

also distinguishable on similar grounds. *See, e.g., Transcontinental Realty Investors, Inc. v.*

*McGuire, Craddock, Strother & Hale*, P.C., 2011 WL 1493958, at *5 (Tex. App. – Dallas, Apr. 11,

2011, pet. denied) (law firm not required to segregate attorney's fees it incurred in prosecuting a

breach of contract claim from fees incurred in defeating malpractice counterclaim where malpractice

counterclaim depended "upon many of the same essential facts and evidence" as attorney's claim

for breach of contract). As already stated, BAM's breach of contract claim and Hill III's

counterclaim for professional negligence have little, if any, factual overlap. In short, under Texas

law, segregation of recoverable from unrecoverable attorney's fees is required. *See Chapa*, 212

S.W.3d at 313.

The Court **overrules** Hill III's objection to Magistrate Judge Toliver's award of expenses

based on Alan Loewinsohn's Declaration. Magistrate Judge Toliver based her award of expenses

on the Declaration and Supplemental Declaration of Alan Loewinsohn stating that, "pursuant to the

parties' stipulation (doc. 240), Mr. Loewinsohn was not required to prove with particularity the costs

his firm incurred in representing BAM, and BAM is therefore entitled to an award of all such costs."

[doc. 357, Aug. 11, 2011 Order at 18]. Hill III objects, contending that nothing in the Stipulation

at issue "indicates that the Hills agreed that a conclusory assertion in a declaration, unsupported by

31

any other evidence, would be sufficient to support a claim for $1.2 million in costs.  At a minimum, BAM needed to specifically describe how it incurred $1.2 million in expenses, and submit reasonable backup documentation supporting its claim." [doc. 365, Hill III Obj. to Findings at 32].

The Stipulation provides in relevant part:

> The Parties hereby stipulate that BAM may submit by affidavit no later than April 29, 2011 evidence in support of an award of attorneys' fees and expenses to BAM, in the event of a recovery by BAM as part of the Fee Dispute . . . which affidavit shall be considered part of the evidence presented to Judge Toliver during the evidentiary phase beginning the week of April 18, 2011.

[doc. 240].

Based on this Stipulation, the Court concludes that the Declaration and Supplemental Declaration of Alan Loewinsohn are sufficient evidence of BAM's expenses under the terms of the Stipulation.  Specifically, submission "by affidavit" means just that, and Hill III's argument that additional evidence is required are contrary to the plain language of the Stipulation.

Nevertheless, given the Court's finding that segregation of recoverable from unrecoverable fees and expenses is required, the Court is unable to determine the appropriate amount of fees and expenses absent a supplemental declaration by Mr. Loewinsohn.

**B.**

***BAM'S Conditional Objection to Magistrate Judge Toliver's Findings***

BAM's sole objection concerns Magistrate Judge Toliver's characterization of payments from the MHTE/Albert G. Hill, III Trust that Hill III has been using to pay attorneys' fees he is incurring in challenging BAM's fee claim in this case (as well as in challenging certain fee claims related to the Final Judgment in the Underlying Litigation in Case No. 3-07-cv-2020-O).

In her Findings, rejecting BAM's argument that Hill III is obligated to immediately pay BAM its attorneys' fees, Magistrate Judge Toliver found that Hill III may "elect to either (a) pay BAM 30% of the fair market value of his recovery, or (b) pay BAM 30% of amounts that Hill III receives under the settlement as he receives them." [doc. 319, Findings at 36].[10]   In her August 11, 2011 Order modifying her initial findings, Magistrate Judge Toliver rejected BAM's claim that monies paid by the MHTE/Albert G. Hill, III Trust for attorneys' fees were monies "received" by Hill III that were therefore subject to BAM's 30% fee, finding.

> As to BAM's assertion that it is also entitled to 30% of the money that the Hill III Subtrust has spent on attorneys' fees, the Court disagrees.  In March 2011, BAM moved to compel the Hills to return to the registry of the court any monies paid from the MHTE/Albert G. Hill III Trust to any attorney in connection with work performed relating to the instant fee dispute.  (doc. 158 at 9).  At a hearing on the motion, Hill III's attorney argued that the trustee's payments to attorneys to defend the trust corpus were not "distributions" to Hill III, but were akin to payments for managing trust assets.  The District Judge agreed and denied BAM's motion to compel.  (doc. 336-1 at Appendix 6-10).  This conclusion also finds support in the case law.  Accordingly, the Court agrees with the Hills and finds that BAM is not entitled to recover 30% of the amounts that the MHTE/Albert G. Hill has paid in legal fees.

[doc. 357, Order at 5-6, internal case citations omitted].

BAM objects, arguing that: (i) Magistrate Judge Toliver erred in an "effort to defer to what the Hills erroneously claims was a prior ruling of this Court" [doc. 375, BAM Reply at 7]; and (ii) "fee payments from the [MHTE/Albert G. Hill, III Trust] were made on Hill III's behalf pursuant to paragraph 39 of the Final Judgment, and on this basis [. . .] such payments constitute recoveries on which BAM are due a fee." [*Id.*]

---

[10]Magistrate Judge Toliver's decision to provide Hill III with the right to elect when to pay BAM its attorneys' fees is in keeping with the terms of the BAM Fee Agreement, under which: "Attorneys agree to take Attorney's Fees at the time of distribution or benefit if so desired by Clients."  Hill III App., Ex. L at 228 (DX 221).

In response, Hill III argues that: (i) BAM untimely raised this issue resulting in waiver on appeal; and (ii) under both Texas law and the terms of the MHTE/Albert G. Hill, III Trust, the trust's payments of attorneys' fees constitute expenses of the trust and are not "distributions" to Hill III. [doc. 371, Hill III Resp. at 8].

The Court assumes, without finding, that BAM has not waived its right to appeal this issue. Although the Court did not expressly state on the record at the March 29, 2011 hearing that the trustee's payments to attorneys to defend the trust corpus were not properly characterized as "distributions" to Hill III, and that BAM was therefore not entitled to 30% of the amounts paid out by the trustee, the Court now expressly so finds for the alternate reason stated by Magistrate Judge Toliver, namely, that "this conclusion [] finds support in the case law." [doc. 357, Order at 6].[11] *See Hachar v. Hachar*, 153 S.W.3d 138, 141 (Tex. App. – San Antonio 2004, no pet.) (in suit alleging breach of fiduciary duty, affirming payment of attorneys' fees from trust corpus); *American Nat. Bank of Beaumont v. Biggs*, 274 S.W.2d 209, 222 (Tex. App. – Beaumont 1954, writ ref'd n.r.e.) (permitting trustees to recover attorneys' fees from trust principal, which fees were incurred in defending suit brought by beneficiaries); *duPont v. Southern Nat. Bank of Houston, Tex.*, 771 F.2d 874, 886 (5th Cir. 1985) (trustee entitled to reimbursement from trust estate for expenses which the trustee, acting reasonably and in good faith, incurs in defense of litigation); Restatement (Second) Trusts § 233, comment g ("Expenses incurred by the trustee in maintaining or defending an action to protect the principal of the trust property or to assure the title thereof are payable out of principal.

---

[11]At the hearing, denying BAM's motion to compel, the Court found that the instant fee dispute between BAM and Hill III arose "in connection with" the Underlying Litigation, and pursuant to paragraph 39 of the Final Judgment in the Underlying Litigation, "fees incurred in connection with the litigation settled through the settlement agreement may be paid from Al III's separate interest in the MHTE trust."  March 29, 2011 Hearing Transcript 41:7-41:21.

. . ."); *see also* Tex. Prop. Code § 116.202(a)(4) (trustee shall pay from trust principal "expenses of a proceeding that concerns primarily principal, including a proceeding to construe the trust or to protect the trust or its property[.]")

Furthermore, to the extent not expressly modified by the Final Judgment, the MHTE Articles of Agreement and Declaration of Trust control the rights of the beneficiary and the authority of the trustee. *See* Case No. 3-07-cv-2020-O [doc. 999 ¶ 14]. The MHTE Articles allow the trustee the power "to do anything [] properly incident [to managing the Trust] that to the said trustee and said Advisory Board may seem reasonable and to the best interest of the Trust Estate." MHTE Arts., Art. I, Sec. 4(c). The record also includes an uncontroverted Declaration of J. Holt Vinson, Trustee of the MHTE/Albert G. Hill, III Trust, wherein he declares:

> I am responsible for administration of the Trust. Within the scope of my duties, I have determined, *inter alia*, that payment of certain attorney's fees and costs for the defense of the attorneys' fee claims brought against Albert G. Hill III and his family are in the best interest of the Trust and are necessary to protect the corpus of the Trust to the extent the claims seek to reach the corpus of the Trust.

[doc. 371, App. to Hill III Resp. to BAM Conditional Obj., Ex. P, Decl. of J. Holt Vinson at 2, ¶ 3].

In short, case law and evidence of record support Hill III's position, namely, that the trustee's payments of attorneys' fees to protect the trust corpus are not "distributions," as that term is used in paragraph 41 of the Final Judgment (*see* 3-07-cv-2020-O, doc. 999 ¶ 41), but are instead payments made by the trustee incident to the trustee's duties in managing the trust under the provisions of the MHTE Articles of Agreement and Declaration of Trust. [Ex. P, Decl. of J. Holt Vinson at 2, ¶ 3]. Accordingly, BAM is not entitled to recover 30% of the amounts that the MHTE/Albert G. Hill, III Trust has paid in legal fees, and BAM's objection to this finding is **overruled**.

## II.

35

The Court now turns to Hill III's Objections to Magistrate Judge Toliver's Summary Judgment Order. [doc. 365, Hill III Obj. to Findings at 32-34; doc. 376, Hill III Reply at 19-20].

During the course of the fee dispute, Hill III filed an amended counter-complaint against BAM and a cross-complaint against Malouf individually, alleging breaches of fiduciary duties to Hill III, professional negligence, duress, breach of oral contract and fraud. [doc. 203, First Amended Counter-Complaint, ¶¶ 40-51, 52-59, 60-62, 63-69, 70-76]. BAM subsequently filed a motion for summary judgment as to Hill III's counterclaims. [doc. 309]. On June 20, 2011, Magistrate Judge Toliver entered an order granting BAM's motion for summary judgment as to Hill III's counterclaims for breach of fiduciary duty, duress, breach of oral contract and fraud, and denying BAM's motion as to Hill III's counterclaim for professional negligence, finding that BAM had failed to demonstrate the absence of fact issues. [doc. 322, Summary Judgment Order].[12] Magistrate Judge Toliver reasoned that, with the exception of Hill III's professional negligence counterclaims, all remaining counterclaims were "plainly barred by collateral estoppel" based on her prior rulings on the same issues in BAM's favor and against Hill III in her Findings of Fact and Conclusions of Law. [doc. 322, Summary Judgment Order at 7-8]. Magistrate Judge Toliver found as follows:

> Hill III argues that BAM breached the fiduciary duties it owed him by (1) inserting a purported release into the Global Settlement Agreement; (2) lobbying the GAL to approve BAM's inflated fee request; [and] (3) coercing Hill III to sign the BAM Fee Agreement by refusing to advance him $300,000 unless he signed it. This Court already has ruled on these three issues in BAM's favor and against Hill III in its Findings of Fact and Conclusion of Law. Hill III's claim that BAM is liable for duress because of BAM's refusal to advance him the $300,000 for the new trial unless he signed the BAM Fee Agreement fails for the same reason. All of these counterclaims are plainly barred by collateral estoppel. Similarly, Hill III arges that his breach of oral contract claim is based on BAM's premature withdrawal from his

---

[12]On June 23, 2011, upon Hill III's motion, Magistrate Judge Toliver dismissed with prejudice Hill III's professional negligence counterclaim. [doc. 329].

case in July 2010, which caused him to incur legal expenses to pay other attorneys, and his fraud claim is based on alleged misrepresentations that BAM made to him about suing third parties.  Again, however, the Court addressed these issues in its Findings of Fact and Conclusions of Law, and the parties are bound to those findings by the doctrine of collateral estoppel.  Accordingly, BAM's Motion for Summary Judgment is granted as to Hill III's claims for breach of fiduciary duty, breach of oral contract, duress, and fraud.

[doc. 322, Summary Judgment Order at 7-8, internal citations omitted].

"Issue preclusion, formerly known as collateral estoppel, applies when the following elements are met: (1) the issue at stake must be identical to the one involved in the prior action; (2) the issue must have been actually litigated in the prior action; (3) the determination of the issue in the prior action must have been a part of the judgment in the earlier action." *In re Southmark Corp.*, 163 F.3d 925, 932 (5th Cir. 1999). Collateral estoppel, unlike res judicata, "does not require a final judgment on the merits." *Rolls-Royce Corp. v. Heros, Inc.*, 576 F. Supp. 2d 765, 777 (N.D. Tex. 2008) (Fitzwater, J.).  "Relitigation of an issue is not precluded unless the facts and the legal standard used to assess them are the same in both proceedings." *In re Southmark Corp.*, 163 F.3d at 932.

Hill III objects to Magistrate Judge Toliver's application of the doctrine of collateral estoppel in the Summary Judgment Order, and further contends that because of Magistrate Judge Toliver's bifurcation of the BAM fee trial from the trial of Hill III's counterclaims (and her issuance of a summary judgment order prior to the scheduled June 27, 2011 trial), Hill III was never able to fully and fairly litigate its counterclaims.  In response, BAM asserts that Magistrate Judge Toliver correctly granted summary judgment, albeit applying the law of the case doctrine, rather than collateral estoppel. [doc. 370, BAM Resp. at 46].  "Unlike the more precise requirements of res judicata, law of the case is an amorphous concept.  As most commonly defined, the doctrine posits

that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983) (citation omitted).

The Court **overrules** Hill III's objection to Magistrate Judge Toliver's Summary Judgment Order.   Regardless of the legal doctrine applied, given the overlap, the Court has no trouble concluding that the issues presented at the April 2011 evidentiary hearing on BAM's fees, and those required to resolve BAM's summary judgment motion as to Hill III's counterclaims (other than professional malpractice) are identical, the issues were actually litigated in connection with the fee dispute, and the determination of the issues was part of Magistrate Judge Toliver's decision that the Fee Agreement was valid and enforceable, that Hill III breached and anticipatorily breached the BAM Fee Agreement, and that forfeiture of fees was not warranted.   Following a *de novo* review, the Court has reached the same conclusion, and affirms Magistrate Judge Toliver's Summary Judgment Order.

## III.

In sum, following the Court's *de novo* review and its rulings on the parties' objections to Magistrate Judge Toliver's Findings, the Court concludes that:

(1)    the BAM Fee Agreement is valid and binding on Hill III;

(2)    Hill III breached and anticipatorily breached the BAM Fee Agreement;

(3)    a portion of the "gross affirmative recovery" obtained by BAM in settlement of the Underlying Litigation, for purposes of calculating BAM's attorneys' fees, is comprised of:

38

    a.    $30,851,104 paid into the registry of the Court from the MHTE to Hill III; and

    b.    $43,710,765 for the Hill III Subtrust and $2,008,840 for the Jr./III Subtrust, as valued and discounted by Kinrich;

    c.    for a value of $76,570,709, subject to an offset of $7,560,838 in the amount Hill III was obligated to pay others in the Underlying Litigation pursuant to the Global Settlement;

    d.    for a total value of $69,009,871;

    e.    BAM is entitled to a 30% contingency fee on this portion of the "gross affirmative recovery" in the amount of $20,702,961;

(4)    a portion of the "gross affirmative recovery" obtained by BAM in settlement of the Underlying Litigation also includes the $12,400,000 for the children's trusts, as valued and discounted by Kinrich.  Following an equitable adjustment, BAM is entitled to a 10% contingency fee on this portion of the "gross affirmative recovery" in the amount of $1,240,000;

(5)    Combining the 30% contingency fee in the amount of  $20,702,961, with the equitably adjusted 10% contingency fee in the amount of $1,240,000, BAM is entitled to a total fee recovery of $21,942,961;

(6)    BAM's attorneys' fees are not subject to forfeiture for BAM's alleged breaches of fiduciary duty;

(7)    Hill III may elect to either (a) pay BAM 30% of the fair market value of his recovery (10% of the fair market value of his recovery pertaining to the children's trusts), or

(b) pay BAM 30% of amounts that Hill III received under the settlement as he receives them (pay BAM 10% of the amounts that Hill III receives under the settlement related to the children's trusts as he receives them).

(8)    BAM is entitled to an award of prejudgment interest at the rate of 5% per annum. Prejudgment interest began to accrue on January 28, 2011, the date that BAM filed its complaint in intervention in this case;

(9)    BAM is entitled to an award of postjudgment interest, calculated at the applicable federal rate.  28 U.S.C. § 1961(a);

(10)    BAM is entitled to an award of costs, as per the BAM Fee Agreement, for the expenses it incurred in the Underlying Litigation in the amount of $479,595.67;

(11)    BAM is entitled to recover from Hill III its reasonable costs and fees in defending against Hill III's counterclaims, such amount to be determined following BAM's counsel's submission of a supplemental declaration segregating recoverable costs and fees from unrecoverable costs and fees;

(12)    Hill III is entitled to an offset of $691,175.93 against the fees and costs he owes BAM for the expenses he incurred from July 21, 2010 through final judgment in each of the cases from which BAM withdrew from representation; and

(13)    BAM is entitled to judgment as a matter of law on Hill III's counterclaims and cross-claim.

**SO ORDERED** this **31st day** of **December, 2011.**

_Reed O'Connor_
**Reed O'Connor**
**UNITED STATES DISTRICT JUDGE**