**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

**LISA BLUE/BARON AND BLUE,
CHARLA G. ALDOUS d/b/a ALDOUS
LAW FIRM, and THE LAW OFFICES OF
STEPHEN F. MALOUF, P.C.,**

                  **Intervenor Plaintiffs,**          **Case No. 3:10-CV-02269-O-BK**

**v.**

**ALBERT G. HILL, III, and ERIN HILL,
individually and on behalf of her minor
children, N. HILL, C. HILL, and A. HILL,**

                  **Defendants.**

**FINDINGS, CONCLUSIONS AND RECOMMENDATION**

This cause is before the Court on Albert G. Hill, III's ("Hill III") and Erin Nance Hill's (collectively "the Hills") *Motion for Post-Judgment Relief Pursuant to Federal Rule of Civil Procedure 60(b)* (Doc. 470). For the reasons that follow, the undersigned recommends that the District Court **DENY** motion.

**I.      BACKGROUND**

In December 2011, District Judge O'Connor entered a *Memorandum Opinion and Order* in this case in which he adopted, in part, this Court's findings that the Hills owed their prior attorneys a contingency fee pursuant to their fee agreement. (Doc. 379). In sum, Judge O'Connor ruled that Plaintiffs Lisa Blue, Charla Aldous, Stephen Malouf, and their law firms (collectively "BAM") were entitled to recover from the Hills an attorneys' fee award in the amount of $21,942,961. *Id.* at 5. Subsequently, the Hills moved to alter or amend the Court's judgment pursuant to Federal Rule of Civil Procedure 59(e). (Doc. 389). Judge O'Connor

denied the motion, warning the Hills that their motion came "precariously close to the line"

because they had offered nothing new for the Court's consideration. (Doc. 413 at 2).

## II.     MOTION TO RECONSIDER

In the motion now before the Court, the Hills seek reconsideration of (1) Judge

O'Connor's *Memorandum Opinion and Order* (Doc. 379), and (2) the final judgment (Doc. 384)

entered in this case. (Doc. 470 at 4). The Hills argue that the judgment against them was

obtained as a result of BAM's fraud within the meaning of Rule 60(b)(3). They contend that the

fraud interfered with their ability to have a fair trial before the undersigned. *Id.* at 24-25. In

particular, the Hills allege that BAM was actively involved in ensuring that the Hills were

indicted for mortgage fraud two weeks before the attorneys' fee dispute trial was set to begin, and

the Hills were not able to defend themselves against BAM's claims. *Id.* at 25. The Hills further

allege that BAM attempted to conceal the evidence of their wrongdoing by misrepresenting to

them and to this Court that all relevant information had been produced when that was not the

case. *Id.* at 25-26.

If the Court does not find that the Hills are entitled to Rule 60(b) relief, they request to be

permitted to conduct discovery and convene an evidentiary hearing to determine whether relief

from the judgment is warranted. *Id.* at 27-28. Specifically, the Hills request the following

additional discovery: (1) a third deposition of Blue; (2) second depositions of Malouf and

Aldous; (3) the deposition of former First Assistant District Attorney Terri Moore; (4) the

deposition of District Attorney Craig Watkins; (5) the deposition of Watkins' secretary, Sharon

Fuller; (6) document discovery concerning all financial contributions or other payments by

members of BAM to Watkins or Moore, and all fundraising efforts by members of BAM on

behalf of Watkins or Moore; and (7) document discovery concerning all communications and records relating to communications between any BAM attorney and any employee or representative of a law enforcement or prosecuting agency during the period from January through April 2011.[1] *Id.* at 27-28.

BAM responds that the Hills have not moved for Rule 60(b) relief within a reasonable amount of time, considering (1) the court's interest in the finality of the litigation; (2) the fact that the Hills have been complaining about this same alleged misconduct by BAM since April 2011 when they sought a stay of the trial based on their "curiously timed indictments"; (3) the Hills already have conducted discovery as to BAM's alleged misconduct, which led nowhere; and (4) the prejudice against BAM is severe because the post-judgment interest rate accruing on their award is extremely low. (Doc. 473 at 12-15). BAM argues that both the undersigned and Judge O'Connor already have absolved BAM of any perceived wrongdoing in regard to the Hills' indictments, and the Hills are merely rehashing old issues and evidence in an attempt to further delay enforcement of the judgment against them. *Id.* at 5, 16-24. BAM concludes that the Hills have not produced clear and convincing evidence that BAM was actively involved in the district attorney's decision to indict the Hills, nor is there any evidence that the indictments precluded them from participating in their fee dispute trial. *Id.* at 24-26.

The Hills reply that the evidence they have presented in support of their Rule 60(b)(3) motion points to the "inescapable" conclusion that Blue was actively involved with D.A. Watkins in procuring the Hills' indictments. (Doc. 482 at 4). They assert that BAM has not

---

[1] The bench trial of this matter commenced on April 20, 2011 and ended on April 27, 2011.

offered any contrary explanation for what the evidence shows. *Id.* The Hills maintain that they were prejudiced by their inability to testify during the fee dispute trial because much of the trial consisted of self-serving testimony by the BAM attorneys about conversations they had with the Hills regarding the parties' fee arrangement and settlement possibilities. *Id.* at 7-8. Finally, the Hills contend that their Rule 60(b)(3) motion was filed within a reasonable period, just two months after they obtained significant new evidence from the District Attorney's office that corroborates their claims. *Id.* at 8-9.

The Hills also have filed a *Notice of Additional Evidence* and supplemental appendix in support of their Rule 60(b) motion. (Doc. 499). The additional evidence indicates that on February 14, 2013, the state trial court conducted a hearing on Hill III's pending *Motion to Quash*. Blue and D.A. Watkins were subpoenaed to testify. Blue invoked her Fifth Amendment privilege on the advice of her attorney, who informed the judge that Blue had just learned that she was under federal investigation, as were several other parties involved in the case. (Doc. 499 at 2; Doc. 499-1 at 9, 16-17). Blue's attorney stated that he felt he had to advise her to plead the Fifth because he had only been hired 15 hours earlier and was not sufficiently familiar with the case. *Id.* at 15. D.A. Watkins did not appear in court, citing illness and the attorney-client and work product privileges. *Id.* at 3-4, 18-22, 26-27. The state judge granted a continuance based on D.A. Watkins's illness. *Id.* at 27-32. Defendants represent that the state court hearing was continued to March 7, 2013. (Doc. 499 at 4).

## III.    APPLICABLE LAW

Courts faced with Rule 60(b) motions must balance the competing interests of finality in judgments with ensuring that justice be done in light of all the facts. *Bankers Mortgage Co. v.*

*United States*, 423 F.2d 73, 77 (5th Cir. 1970). The Court also must consider: (1) whether the

motion for reconsideration was filed within a reasonable time; (2) whether the moving party had

a fair opportunity to present their claim; (3) whether any intervening equities would make

granting relief inequitable; and (4) any other relevant factors impacting the justice of the decision

under reconsideration. *Crutcher v. Aetna Life Ins. Co.*, 746 F.2d 1076, 1082 (5th Cir. 1984). All

factors "are to be considered in the light of the great desirability of preserving the principle of

finality of judgments." *Id.*; *see also* 11 Charles Alan Wright, Arthur R. Miller, & Mary Kay

Kane, FEDERAL PRACTICE AND PROCEDURE § 2863, p. 340 (2d ed. 1995) (Rule 60(b) "does not

allow relitigation of issues that have been resolved by the judgment."). A party making a Rule

60(b)(3) motion must establish that (1) the adverse party engaged in fraud or other misconduct;

and (2) the misconduct prevented the moving party from fully and fairly presenting his case.

*Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 641 (5th Cir. 2005). The moving party has the

burden of proving the misconduct by clear and convincing evidence.[2]  *Id.*

IV.    ANALYSIS

Assuming, *arguendo*, that the Hills' Rule 60(b)(3) motion is timely, the undersigned

nevertheless finds that they have not shown by clear and convincing evidence that BAM

committed fraud or other misconduct. *Id.*  The Hills argue that their evidence shows the

following: (1) there were dozens of phone calls and other communications between Blue and

---

[2]Although the Hills allege prejudice stemming from BAM's misconduct, in order to make
the requisite showing under Rule 60(b)(3), they need not show that that the information
purportedly withheld altered the result of their case. *Rozier v. Ford Motor Co.*, 573 F.2d 1332,
1339 (5th Cir. 1978). This subsection of the Rule is aimed at judgments that were unfairly
obtained, not at those which are factually incorrect. Thus, the Court is not required to <u>yet</u> <u>again</u>
visit the Hills' claims that they were prejudiced by not being able to testify at the trial of this
matter.

D.A. Watkins in the weeks leading up to the Hills' indictments; (2) Blue donated $5,000 to D.A. Watkins and hosted a fundraiser for him less than a month before the indictments; (3) Blue admitted that she discussed the indictments with D.A. Watkins shortly before the indictments were returned, and she did not share that information with the Hills or their new counsel; (4) Blue admitted that once the indictments were issued, she had no further reason to speak with anyone in the D.A.'s Office about the Hills; (5) BAM attempted to conceal evidence of their involvement in securing the Hills' indictments, failed to produce evidence in a timely fashion, and misrepresented to the Court and the Hills that there was no further evidence; (6) Blue and Malouf lied at their depositions about the circumstances surrounding a phone call between Blue and D.A. Watkins during which Watkins informed Blue that the Hills were about to be indicted; (7) an assistant district attorney ("ADA") recently told the Hills' counsel that the pre-indictment investigation was insufficient, apologized on behalf of the Office, and stated that she planned to recommend dismissal of some of the charges; and (8) the charges against Erin Hill were recently dismissed "in the interests of justice." (Doc. 470 at 5-8, 12-24; Doc. 482 at 3).

A.      *Accusations Against BAM*

Even if the Court assumes that all of the above acts occurred, the Hills' accusations amount to nothing more than supposition and speculation that BAM engaged in fraud related to this case. *See Longden v. Sunderman*, 979 F.2d 1095, 1103 (5th Cir. 1992) (upholding the district court's denial of a Rule 60(b) motion because the evidence submitted, consisting of interoffice memoranda, the movant's own allegations, and the affidavit of one of the class plaintiffs, did not constitute clear and convincing proof of the non-movant's perjury).

Indeed, consideration of the evidence submitted by the Hills lends itself to a far less

nefarious conclusion than that drawn by the Hills. The evidence indicates that Blue and D.A. Watkins have had a personal, professional, and financial relationship since at least 2007, well before BAM was involved in the Hills' case. Blue has donated large sums of money to D.A. Watkins's political campaigns since at least 2007. (Doc. 470 at 4) (citing Hills' Appendix at 30-56). While the Hills contend it is suggestive of fraud and misconduct, Blue's longstanding relationship with D.A. Watkins actually undermines their suggestion that she behaved unusually by communicating with Watkins around the time of the indictments and holding a fundraiser for him. Given Blue's and D.A. Watkins's long relationship and her previous donations to his campaigns, neither of those undertakings appears unusual.

The Hills nevertheless insist that the close temporal proximity of their increased communications and the return of the indictments necessarily means that Blue and D.A. Watkins were discussing the indictments. They, however, have not offered one iota of evidence to support this conjecture. Moreover, the undersigned gave the Hills the opportunity to depose Blue on this subject, and Judge O'Connor reviewed Blue's text messages to and from D.A. Watkins during the timeframe in question. That discovery yielded no evidence that Blue and D.A. Watkins ever discussed the Hills' indictment outside of the two brief instances when D.A. Watkins called Blue prior to the return of the indictments – instances about which Blue previously had testified and of which the Hills have long been aware. *See* Doc. 470, Appx. at 93 (Blue testifying that she had no conversations with anyone from the D.A.'s office in March or April 2011 about the Hills' indictments except those two instances previously noted); Doc. 470, Appx. at 120 (Blue testifying that in 2011, she did not discuss the Hills with D.A. Watkins except for the two instances previously noted).

The increase in the number of calls between Blue and D.A. Watkins around the time of the return of the indictments could just as well be explained by the fact that, according to the Hills, Blue held a fundraiser for Watkins on March 11, 2011 – some 20 days before the indictments were handed down. (Doc. 470 at 34). Or perhaps they were discussing music, family, politics, or their charitable work, which Blue testified they were wont to do. (Doc. 470, Appx. at 120). The point being that the subject of Blue's and Watkins's discussions is unknown, and the Court declines the invitation to guess as to their content for purposes of this motion. The actions that the Hills describe simply do not demonstrate by clear and convincing evidence that BAM was involved in the Hills' indictment. *Hesling*, 396 F.3d at 641.

In any event, and equally as important, the Hills' arguments about BAM's alleged misbehavior are merely a rehash of those that the Court has rejected before. Indeed, the Hills have complained repeatedly about the same alleged misconduct for almost two years. In April 2011, the Hills unsuccessfully sought a stay of the trial based on their "curiously-timed" indictments. (Docs. 223, 236-36). Subsequently, the Hills obtained discovery which they contended showed that BAM was involved in securing the Hills' indictments by virtue of Blue's communications with the District Attorney. (Docs. 286, 302, 308). As noted, the undersigned compelled Blue's second deposition on the subject. (Doc. 311). Hill III then unsuccessfully moved to stay the trial of his counterclaim based on BAM's alleged misconduct relating to the indictments, which he claimed precluded the Hills from testifying at trial. (Docs. 324, 329). Next, the Hills moved for sanctions against BAM based in part on the identical phone record evidence and allegations of misconduct alleged here – claiming that the pattern of Blue's phone calls and text messages with Watkins and others in the D.A.'s office shortly before the Hills'

indictments indicated BAM's involvement in the indictment process.  (Doc. 326 at 19, 24-26).

Judge O'Connor denied the Hills' motion after reviewing Blue's text messages to D.A. Watkins

and concluding that they were unrelated to the Hills' indictments.  (Docs. 368-69).

The Hills already have been admonished once for rehashing their losing arguments.

(Doc. 413 at 2).  Yet they have chosen to do so again here.  Their supporting evidence is

comprised of various pleadings, exhibits, and pieces of information that the Court has either seen

many times before or has otherwise been aware of for many months through the course of this

case.[3]  *See* Doc. 473 at 16-24 (BAM chart of Hills' exhibits noting when each document was

either presented to the court or the court was made aware of the subject matter contained

therein); *see also* 11 Wright, Miller, & Kane, FEDERAL PRACTICE  at 340 (Rule 60(b) "does not

allow relitigation of issues that have been resolved by the judgment.").  Accordingly, their Rule

60(b)(3) motion also should be denied insofar as they assert the same grounds previously raised.

B.      *Pending State Criminal Case*

The Hills also have not clearly and convincingly shown that they are entitled to Rule

60(b)(3) relief due to an ADA's alleged statements regarding the D.A.'s deficient investigation

and the possible dismissal of charges against Hill III.  *Longden*, 979 F.2d at 1103.  In support of

their argument, the Hills direct the Court to their appendix, Doc. 470 at 23-24, but the cited pages

merely encompass the *Motion to Quash and Dismiss Indictments Due to Prosecutorial*

*Misconduct* which Hill III has filed in the criminal case.  (Doc. 470, Appx. at 411-868).

Moreover, Hill III proffered no actual evidence of those particular statements with his *Motion to*

---

[3] The only somewhat "new" material is the *Motion to Quash* that Hill III has filed seeking
dismissal of the criminal case against him.  (Doc. 470, Appx. at 411-868).  Nevertheless, that
motion is based on arguments very similar to those now before the Court.

*Quash*.  The only statement from an ADA in the record is an e-mail from ADA Deborah Smith, which says nothing about the D.A.'s investigation and does not contain an apology for the supposedly insufficient investigation.  (Doc. 470, Appx. at 867).  ADA Smith also states that she will make an unspecified recommendation on "two of the four cases," and that two other cases were still under review.  *Id.*  ADA Smith additionally states in her e-mail that she recently was assigned to the animal cruelty prosecution unit, which the Hills apparently would have this Court surmise is because she planned to dismantle the charges against them.  Nevertheless, the record indicates no reason for the reassignment, and the Court will not speculate about the reason.  In fact, the Hills undercut their own argument when they note that ADA Smith successfully sought dismissal of all charges against Erin Hill before her transfer.  (Doc. 470, Appx. at 415).

The Court also rejects the Hills' apparent attempt to argue that the dismissal of the charges against Erin Hill must mean that the initial filing of them was the result of BAM's collusion with D.A. Watkins.  Again, the Hills' basis is mere speculation.  Moreover, their conclusion is somewhat illogical since Watkins is still the District Attorney.  If, in fact, he colluded with BAM to have Erin Hill indicted, the Hills have not offered any coherent explanation as to why he would now consent to the dismissal of the charges against her.

Finally, the Hills' *Notice of Additional Evidence* does not alter the Court's analysis because none of the events described therein constitute clear and convincing evidence of BAM's misconduct.  As presented in the *Notice*, at the hearing on Hill III's *Motion to Quash*, Blue invoked her Fifth Amendment privilege because (1) she had just learned she was under federal investigation for unspecified matters; and (2) her attorney was new to her case and insufficiently familiar with it to give her any other advice.  (Doc. 499 at 2; Doc. 499-1 at 9, 15-17).  The court

continued the hearing to another date because Watkins was too ill to appear. (Doc. 499-1 at 3-4, 18-22, 26-32).

In sum, the Hills have not made out a clear and convincing case of fraud or misconduct by BAM or anyone else in support of their Rule 60(b)(3) motion. *See Longden*, 979 F.2d at 1103. "[C]lear and convincing evidence is that weight of proof which produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts of case." *Shafer v. Army & Air Force Exchange Service*, 376 F.3d 386, 396 (5th Cir. 2004) (internal quotes omitted). The Hills' allegations fall woefully short of meeting that standard.

C.      *Request for Further Discovery*

As to the Hills' alternative request to conduct yet more discovery into BAM's alleged misconduct, that relief is not warranted. The Court has a strong interest in the finality of judgments. *See Castellano v. Fragozo,* 352 F.3d 939, 959 (5th Cir. 2003). Thus, to warrant reopening discovery for purposes of the possible grant of Rule 60(b)(3) relief, it is reasonable to require the Hills to make some showing that a fraud has been committed. *See Duhaime v. John Hancock Mut. Life Ins. Co.,* 183 F.3d 1, 7 (1st Cir. 1999) (after final judgment has been entered, the court will only permit discovery into alleged fraud if there has been "some showing that a fraud actually has occurred"); *H.K. Porter Co., Inc. v. Goodyear Tire & Rubber Co.*, 536 F.2d 1115, 1118-20 (6th Cir. 1976) (where movant had shown no proof of fraud, Rule 60(b)(3) discovery was not proper); *see also Pearson v. First NH Mortg. Corp.*, 200 F.3d 30, 35 (1st Cir. 1999) (on motion to set aside a final order under Bankruptcy Rule 9024, once the record

evidence demonstrates a "colorable" claim of fraud on the court, the court may exercise its discretion and permit discovery and evidentiary proceedings). As discussed above, the Hills have made no showing of fraud.

The Hills rely on *MMAR Group, Inc. v. Dow Jones & Co.*, 187 F.R.D. 282 (S.D. Tex. 1999) in support of their request to reopen discovery. (Doc. 470 at 27-28). However, that case presented altogether different circumstances. There, the plaintiff had obtained a large defamation judgment based on a newspaper article stating that plaintiff had hidden investment portfolio losses. Following the entry of judgment, a former employee of plaintiff advised the defendant that plaintiff had reels of taped conversations that it had not provided during discovery and had committed various acts of wrongdoing in connection with the lawsuit. 187 F.R.D. at 286. The district court reopened discovery based on this inside information. In this case, as described above, the Hills have offered no evidence of that caliber and instead have engaged in speculation based on evidence the Court has already considered and rejected. Accordingly, the reopening of discovery and conduct of an evidentiary hearing is not warranted.

## V.    CONCLUSION

For the reasons set forth above, the undersigned recommends that the Court **DENY** the Hills' *Motion for Post-Judgment Relief Pursuant to Federal Rule of Civil Procedure 60(b)* (Doc. 470).

**SO RECOMMENDED** on March 1, 2013.

RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

12

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

13