### IN THE UNITED STATES DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

**CAMPBELL HARRISON & DAGLEY, et al.,**
**Plaintiffs,**

**v.**                                    **Case No. 3:10-CV-02269-L-BK**

**ALBERT G. HILL, III, and ERIN HILL,**
**individually and on behalf of her minor**
**children, N. HILL, C. HILL, and A. HILL,**
**Defendants.**

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION

This cause is before the Court for a recommendation on Intervenor-Plaintiff PBL's

*Motion for Judgment on the Pleadings and for Summary Judgment on its Claim in Intervention*.

Doc. 585.  For the reasons that follow, it is recommended that the motion be **GRANTED IN**

**PART.**

**A.  Procedural History**

The history of this case is well known to the parties and will not be repeated at length

here.  In short, PBL Multi-Strategy Fund, L.P. ("PBL") filed a claim-in-intervention in March

2011 to enforce payment of a note (the "Note") alleged to have been executed by Ahtrey

Investments, L.L.C. ("Ahtrey") with an original principal amount of $5 million.  Doc. 182 at 3.

Pursuant to the terms of the Note, PBL advanced $2.6 million to fund litigation between Albert

G. Hill III ("Hill III") as a plaintiff and certain defendants, including in underlying Case No.

3:07-CV-2020-L-BK (the "2020 case").  Doc. 182.  Hill III is alleged to have personally

guaranteed payment of the Note by Ahtrey ("the Guaranty"), which ultimately went into default.

Doc. 182 at 2.

When the judgment in the 2020 case ordered Hill III's creditors' claims severed and filed

in the instant case, PBL was granted leave to intervene to seek recovery under the Note and Guaranty and attorneys' fees from both Hill III and Ahtrey (collectively "Defendants").  Doc. 133; Doc. 182.  Defendants filed a counterclaim against PBL, asserting that PBL breached the parties' agreement under the Note to provide a $5 million line of credit when PBL cut off funding for no reason, even though approximately $2.5 million was still available.  Doc. 250 at 3-5.  Defendants contended that as a result, Hill III could no longer pay his attorneys for representation in the 2020 case and had to retain counsel who charged him on a contingency fee basis, which cost him significantly more in attorneys' fees.  Doc. 250 at 4-5.

In January 2012, PBL and Defendants entered into a settlement agreement (the "Agreement"), and filed a joint motion requesting that the Court authorize payment to PBL of $3.2 million from the funds in the registry for the 2020 case.  2020 case at Doc. #1227.  The undersigned stayed consideration of that motion as well as several others, pending resolution of the appeal that Hill III had taken from the final judgment in the 2020 case.  2020 case at Doc. #1293.  Following entry of the mandate in that appeal and years of miscellaneous post-judgment litigation, District Judge Lindsay entered an order in January 2016 disbursing the registry funds in the 2020 case to two of Hill III's creditors (the "Disbursement Order").  2020 case at Doc. #1686.  Judge Lindsay noted that because all of the funds in the registry were earmarked for those creditors, there were no funds left in the registry to be distributed to PBL.[1]  2020 case at Doc. #1686 at 32.

The parties' Agreement expired by its own terms when no court registry funds were disbursed to PBL and the Disbursement Order became final.[2]  Doc. 585-1 at 41-42 (providing

---

[1] PBL conceded that the law firms commonly referred to as CHD and CNBW had contingent fee claims which had priority over PBL's claims and that CHD also had priority for its hourly fees.
[2] Defendants' argument to the contrary was rendered moot when Hill III's appeal of the

that payment of the settlement funds was contingent on the District Court; "In the event the

Court refuses to allow disbursement of the Settlement Funds . . . this Agreement shall be of no

further force or effect" such that the parties could once again assert their claims and defenses).

PBL now moves for summary judgment on its claim to enforce the Note and Guaranty and as to

Defendants' counterclaim.  Doc. 585.  PBL also has requested that the Court enter judgment in

its favor on Defendants' affirmative defenses pursuant to Rule 12(c) of the Federal Rules of Civil

Procedure.[3]  Doc. 585.

## B.  Parties' Arguments

### 1.  Abandonment of PBL's Claim

Defendants argue initially that PBL's dismissal motions are precluded in the instant case

because the judgment is final and the case is closed and has been treated as such.  Doc. 591 at 5-

7.  Thus, they assert, PBL has abandoned its claim.  Doc. 591 at 8-9.

PBL responds that the Court's Disbursement Order disposed of all claims except its

claim, which only sought to establish the priority of its debt.  Doc. 594 at 4.  PBL argues that its

action against Defendants on the Note and Guaranty has never been ruled on, expressly or by

implication, by any court in any case.  Doc. 594 at 4.  As such, PBL asserts, the only effect of the

Court's Disbursement Order is that PBL has to find a source other than the registry funds in the

2020 case to satisfy its claims against Defendants once it has obtained a judgment.  Doc. 594 at

4.

Defendants' position is meritless.  They argue that final judgment occurred in January

2012 when the Court awarded attorneys' fees to Hill III's prior attorneys Blue, Aldous, and

_____

Disbursement Order was dismissed for failure to prosecute.  2020 case at Doc. #1709; Doc. 591
at 9-10.
[3] In the interest of expediency, the Court will overlook PBL's counsel's failure to comply with
the Northern District's briefing rules.  *See* N.D. TEX. LOCAL RULE 56.3, 56.5.

Malouf ("BAM").   Doc. 591 at 5.  It is true that the Court referred to the instant case as closed

on that date, but that was explicitly in reference to the BAM matter.   Doc. 568 (citing Doc. 566).

Defendants, however, overlook the fact that there also were ongoing fee disputes with several

other of Hill III's creditors which were proceeding in both the 2020 case as well as in a separate

arbitration case.  Those disputes were not resolved until January 15, 2016, when the Judge

Lindsay entered the Disbursement Order and noted that PBL would receive no funds because

there was not enough money to satisfy its claim.  2020 case at Doc. #1686.  PBL filed the instant

motion 30 days later in this case, in which it previously had intervened.  *See* Doc. 131 (granting

PBL leave to file a complaint in intervention); *see also* 2020 case at Doc. #999 (final judgment

ordering that "claims asserted in this Court by any other creditors of Al III or Erin, are hereby

severed into a separate action.").  Until the Disbursement Order in the 2020 case was entered,

PBL could not have known the outcome of its claim.  Tying PBL's time to seek relief to the

entry of an award in favor of BAM is nonsensical.  PBL cannot be said to have abandoned its

claim on these facts.

>    *2. Effect of the Parties' Agreement*

Defendants next argue that PBL is not entitled to summary judgment because the parties'

Agreement is still in effect, and PBL has breached the Agreement by filing for summary

judgment prematurely.   Doc. 591 at 9-10.

PBL properly observes that the Agreement was contingent upon the Court's entry of a

final order disbursing the agreed-upon settlement funds to PBL, and no such order was entered.

Doc. 594 at 4-5.  This condition precedent to the enforceability of the Agreement failed to occur,

and the Agreement thus became a nullity.  *See Centex Co. v. Dalton*, 840 S.W. 2d 952, 956 (Tex.

1992) (holding that a condition precedent must be satisfied before a right can accrue to enforce a

contractual obligation).

   *3.  PBL's Motion for Summary Judgment, Doc. 585*

   a. Applicable Law

   Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A party moving for summary judgment has the initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotes omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (citation omitted). Nevertheless, when ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Id.*

   b.  Supporting Evidence

   PBL has submitted evidence showing that in December 2007, Ahtrey executed and delivered the Note to PBL (f/k/a "Palm Beach Multi-Strategy Fund"), which is the holder and owner of the Note. Doc. 585-1 at 5-19. Hill III personally guaranteed payment of the Note in

the Guaranty dated December 26, 2007.  Doc. 585-1 at 21-38.  PBL advanced Defendants

$2,600,000 in installments, as substantiated by the declaration of Troy Phillips, PBL's attorney

for and liquidator of PBL Holdings, LLC, the general partner of PBL Capital, L.P., which is the

general partner of PBL.[4]  Doc. 585-1 at 80-81.  Just two weeks before the Note and Guaranty

were executed, the defendants in the 2020 case moved to disqualify Hill III's then-counsel,

Bickel & Brewer ("B & B").  2020 case at Doc. #5.  That motion was granted in September

2008.  2020 case at Doc. #126.  Following Defendants' default on the loan, PBL intervened in

this case in March 2011.  Doc. 182.  Thirty days after the Disbursement Order was entered in the

2020 case, PBL filed this motion.  Doc. 585.  As of the filing of the motion, Defendants owed

PBL $8,172,973.25, with interest continuing to accrue at a rate of $2,146.73 a day.  Doc. 585-1

at 81-82.

    c.  Recovery on the Note and Guaranty

        Pursuant to Texas law, to recover from Ahtrey on the Note, PBL must establish: (1) the

existence of the Note; (2) that it is the legal holder or owner of the Note; (3) that Ahtrey is the

maker of the Note; and (4) the balance due and owing on the Note.  *See*

*UMLIC VP, LLC v. T&M Sales & Enviro. Syst., Inc*., 176 S.W.3d 595, 611 (Tex. App. – Corpus

Christi 2005).  Once a note holder establishes these facts, it is entitled to recover if the maker of

the note fails to establish a defense.  *Blankenship v. Robins*, 899 S.W.2d 236, 238 (Tex.App.-

Houston [14th Dist.] 1994).  PBL has met all of these requirements.  There is no dispute that the

Note exists.  Doc. 585-1 at 5-19.  "Palm Beach Multi-Strategy Fund, L.P.," a/k/a PBL, is the

holder and owner of the Note as demonstrated by the Note itself.  Doc. 585-1 at 2, 5.  Ahtrey is

---

[4] Defendants argue that PBL relied entirely on the affidavit of Troy Phillips to prove its case, and
the affidavit should be stricken.  Doc. 587 at 10-11.  This Court, however, has denied
Defendants' motion to strike the affidavit in a separate order entered on this date.

plainly the maker of the Note.  Doc. 585-1 at 5, 8.  Additionally, a sum certain is owed on the

Note.  Doc. 585-1 at 81-82.  Lastly, Ahtrey has not established any defense.  *Blankenship*, 899

S.W.2d at 238.

>To recover damages from Hill III on the Guaranty, PBL must prove: (1) the existence and

ownership of the guaranty; (2) the terms of the underlying contract by the holder; (3) the

occurrence of a default in payment of the obligation; and (4) the guarantor's failure or refusal to

perform.  *Haggard v. Bank of the Ozarks, Inc.*, 668 F.3d 196, 199 (5th Cir. 2012).  There is no

dispute that the Guaranty exists and that PBL is the legal holder thereof.  Doc. 585-1 at 21-34.

The terms of the obligation that Hill III guaranteed are clearly set forth in the Guaranty.  Doc.

585-1 at 23-25.  Defendants do not dispute that a default occurred when the Note matured in

December 2009 and neither Ahtrey nor Hill III, as guarantor, tendered to PBL the amount due.

*See* Doc. 182 at 3.  Accordingly, PBL's motion for summary judgment should be **GRANTED**

allowing PBL to recover on the Note and Guaranty.

>d.  Attorneys' Fees

>PBL also moves for summary judgment on its claim for past attorneys' fees of

$91,000.00 and anticipated future fees of almost $1.2 million.  Doc. 585 at 12-13.  PBL has not

sufficiently supported its case for attorneys' fees, however.  As to fees currently owed, nowhere

does Phillips describe his education or experience, his or his colleagues' hourly rates, or the

usual rate for similar services in the community for this type of case.  He has thus not carried his

burden of establishing the reasonableness of the fees charged.  *See Blum v. Stenson,* 465 U.S.

886, 896 n.11 (1984).  Moreover, a determination of what constitutes a reasonable fee for future

services is sheer speculation.  As such, PBL's motion for summary judgment regarding

attorneys' fees should be **DENIED WITHOUT PREJUDICE**.[5]

     5.  *Defendants' Counterclaim*

PBL next moves for summary judgment on Defendants' counterclaim, arguing that there is no evidence in the record of the amounts Hill III was contractually obligated to pay either B & B or CHD, so any possible damages are unknown.  Further, PBL points to the Guaranty, which provides that it constitutes a continuing, absolute, and unconditional guarantee of payment notwithstanding the validity of the Note or any defense, set-off, or counterclaim available to Ahtrey.  Doc. 585-1 at 24.

Defendants respond that PBL's wrongful decision to cut off funding for the underlying litigation caused Hill III to suffer significant monetary damages because he was forced to hire more costly attorneys on a contingency basis.  Doc. 591 at 11.  In a declaration in opposition to PBL's motion, Hill III attests that PBL refused to provide the approximately $2.5 million in funds that remained available on his $5 million line of credit, despite the fact that he had advised PBL that cutting off the funds would cause severe consequences in his pursuit of the 2020 case.  Doc. 590 at 29.  Hill III alleges that, as a result, he could no longer pay his attorneys and "was forced to retain counsel who would charge me on a contingency fee basis," namely CHD and, subsequently, BAM.  Doc. 590 at 29-30.  He contends that, as a result of having to enter into contingency agreements, he suffered monetary damages when judgments were entered against him for $41 million in favor of CHD and $25 million in favor of BAM.  Doc. 590 at 30.  Defendants also oppose summary judgment on PBL's contention that the Guaranty is absolute and unconditional because such a guaranty does not prevent a guarantor from claiming that the creditor's wrongful post-execution conduct caused the guarantor's liability.  Doc. 591 at 12.

---

[5] In an order entered on this date, the undersigned struck portions of Phillips' affidavit to the extent PBL sought reimbursement of future attorneys' fees and costs.

In reply, PBL contends that Hill III's recent declaration that he had to turn to more expensive attorneys after PBL cut off his funding is both untimely and made in bad faith in light of the fact that B & B was disqualified from the case.   Doc. 594 at 6-7.   PBL also takes issue with Hill III's failure to reveal that both B & B and CHD had a contingency arrangement with him.   Doc. 594 at 7.

As PBL observes and the Court agrees, Ahtrey was not a party to the 2020 case, so it did not incur any obligation for Hill III's attorney's fees to CHD or BAM.   Doc. 585 at 14-15. Accordingly, it suffered no damages as a result of Hill III having hired CHD and BAM to replace B & B.  Thus, PBL is entitled to summary judgment on Ahtrey's breach of contract counterclaim.  *See Case Corp. v. Hi-Class Bus. Syst. of Am., Inc.*, 184 S.W.3d 760, 769 (Tex. App.– Dallas 2005) (holding that damages are an essential element of a breach of contract claim).

Turning to Hill III's counterclaim, even a cursory review of the docket sheet in the 2020 case makes evident that B & B were *disqualified* following extensive litigation about the matter, not terminated due to Hill III's lack of funds.  Moreover, review of PBL's supplemental appendix which contains the attorney-client agreements reveals that both B & B *and* CHD were representing Hill III on a contingency basis.[6]  The Court views the false statements in Hill III's declaration as having been made in bad faith pursuant to Rule 56(h).  *See* Fed. R. Civ. P. 56(h) (providing that if a court finds that a declaration was submitted in bad faith, the court – after notice and time to respond – may order the submitting party to pay the other party's resulting reasonable expenses and attorneys' fees and the offender also may be held in contempt or

---

[6] The Court granted PBL's *Motion for Leave to File Supplemental Appendix*, Doc. 593, in a separate order entered on this date.  Although Defendants note that they wish to submit a supplemental appendix as well, they neither submit the proposed appendix nor describe what documents would be contained therein.

subjected to other sanctions).  Because dismissal of Hill III's counterclaim is warranted on this basis, the Court need not address the issue of whether the Guaranty was absolutely and unconditionally binding.  For the reasons set forth, PBL's motion for summary judgment on Defendants' counterclaim should be **GRANTED**.

   5. *Defendants' Affirmative Defenses*

   Relying on Rule 12(c) of the Federal Rules of Civil Procedure, PBL next seeks judgment on the pleadings in relation to each of Defendants' 13 affirmative defenses, asserting that they lack factual detail and contain only legal conclusions.  Doc. 585 at 14.  Defendants argue that Rule 12(f) is the appropriate mechanism for striking affirmative defenses, and any such motion is untimely.  Doc. 591 at 12-13.

   Assuming that a Rule 12(c) motion is the appropriate vehicle to dispose of the affirmative defenses, PBL has not shown that it is entitled to that relief.[7]  Rule 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings."  A Rule 12(c) motion "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts."  *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (quotation omitted).  In this case, PBL has not pointed to any undisputed material facts in the record relating to Defendants' affirmative defenses that warrant judgment on PBL's behalf.

---

[7] The weight of authority suggests that a motion to strike defenses under Rule 12(f) is the correct mechanism to deploy when a plaintiff disputes the sufficiency of some of a defendant's defenses. *See United States v. Brink*, No. C-10-243, 2011 WL 835828, at *2 (S.D. Tex. 2011); 5C Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 1369 (3d ed. 1998) ("If a plaintiff seeks to dispute the legal sufficiency of fewer than all of the defenses raised in the defendant's pleading, he should proceed under Rule 12(f) rather than under Rule 12(c)").  A Rule 12(f) motion filed at this juncture would be untimely.  FED. R. CIV. P. 12(f) (requiring motion to be filed within 21 days after being served with a pleading to which a response is not allowed).

That notwithstanding, if the district judge accepts the finding herein that summary judgment in PBL's favor is warranted, the affirmative defenses advanced by Defendants are of no moment.  *See AMS Staff Leasing, N.A. Ltd. v. Assoc. Contract Truckmen, Inc.*, No. 04-CV-1344-D, 2006 WL 1096777, at *6 (N.D. Tex. 2006) (Fitzwater, J.) (holding that a grant of summary judgment in full rendered moot a party's request for summary judgment on affirmative defenses).  Thus, PBL's request for dismissal of Defendants' affirmative defenses under Rule 12(c) should be **DENIED**.

## C.  Conclusion

For the foregoing reasons, it is recommended that PBL's *Motion for Judgment on the Pleadings and for Summary Judgment on its Claim in Intervention*, Doc. 585, be **GRANTED IN PART.**

**SO RECOMMENDED** on August 19, 2016.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); F*ED*. R. C*IV*. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district judge, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 *F.3d 1415, 1417 (5th Cir. 1996)*.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE